**In re DENTON COAL COMPANY, Debtor.**

**Bankruptcy No. 4–80–00394.**

United States Bankruptcy Court, W. D. Kentucky.

Feb. 5, 1982.

Allen Youngman, Owensboro, Ky., for creditors committee.

Thomas J. Meyer, Owensboro, Ky., for debtor.

John E. Bickel, Owensboro, Ky., for Inter-Mountain Coal.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy proceeding comes before the Court on objection of the Unsecured Creditors Committee, by counsel, to an Agreed Motion of January 8, 1981, tendered to the Court whereby Inter-Mountain Coal Company (IMC) and Denton Coal Company (Denton), the debtor in possession, settled certain obligations by and between themselves. It has been settled, agreed upon by all parties, and entered by Order of this Court dated September 17, 1981, that the amount of $35,066.87 is justly owing and has been paid to the debtor in possession by IMC.

The issue then remaining for resolution pertains to the exception taken by the Creditors Committee to so much of the January 8, 1981, motion that states: "4. In a separate series of transactions which commenced in early 1980, Denton and Inter-Mountain entered into a joint venture for the purpose of increasing coal reserves... 7. Pursuant to the understanding of the parties to the joint venture, Inter-Mountain was to receive certain rights in respect to the brokerage of coal mined from said leases and an overriding royalty interest in respect to such leases... 8. The parties have reached an agreement ... by reserving a ten cent ($.10) per ton overriding royalty interest in all said leases in favor of Inter-Mountain...."

In essence, the issue to be decided is the nature of the relationship between the debtor in possession and IMC as determinative of whether IMC is entitled to a royalty interest in certain coal leases or whether IMC is merely the holder of an unsecured

claim in the amount of $19,542.47, as representing half of the expenses of exploration for the purposes of securing additional coal reserves.

The facts as they pertain to the issue are evidenced in testimony by way of deposition filed of record:

In 1978 or 1979, Denton and IMC entered into a business relationship whereby IMC would act as broker for Denton's coal. Pursuant to that arrangement, and upon Denton's request and authorization, IMC submitted a bid on a contract solicitation with Mississippi Power Company in November, 1979. The bid was subsequently accepted and acknowledged on this contract, which if successfully fulfilled, would provide to IMC a gross amount of over $800,000 in commissions spanning a fifteen month period on 450,000 tons of coal.

In January, 1980, Denton began having problems with production and its coal reserve. In an effort to expand this coal base as a necessity for fulfilling the Mississippi Power contract, IMC and Denton entered into a series of separate but related business transactions which has been characterized as a "joint venture" or a "joint exploration effort".

The basic understanding between the parties appears to be that IMC would pay one half of the drilling costs on additional potential coal leases. Apparently the procedure is to core drill on a property to determine whether the coal is at such a level, quantity and quality as to be capable of being profitably mined. If the opinion is positive, an option or lease is negotiated with the landowner involving payment of advance royalties and a mineral lease is executed.

In March, IMC began looking for coal leases for Denton to mine to fulfill the requirements of the Mississippi Power contract. Relative to that, IMC hired an agent, C. E. Beane, to acquire coal leases in IMC's name, most of these coal properties were located in Butler County. Denton also began acquiring leases through its personnel, asserts that it had no prior knowledge of IMC's retaining Beane, and was

displeased with the properties that Beane acquired. Subsequently, by agreement of IMC and Denton, those leases were discarded as valueless.

Denton began negotiating coal leases in its own name, and ultimately submitted a bill to IMC on the drilling exploration costs totalling $43,848.00. Evidently IMC selected certain properties for which it would pay half the drilling costs resulting in the payment by IMC to Denton of $19,542.47 according to final invoice dated June 10, 1980. Also, at this time IMC provided funds used for advance royalties on two of these properties and withheld an amount from debtor's weekly coal checks as reimbursement for that specific amount.

To further complicate matters during this time period (January-June, 1980), IMC felt that a "redefinition of the business relationship" of the parties was necessary. On April 14, a meeting was held in Charlottesville, Virginia, at which time a number of items were discussed such as purchasing stock in Denton, an exclusive brokerage agreement on Denton's coal, and a brokerage commission schedule. For purposes of the determination here, the most notable item under discussion regarded the joint exploration effort as to which IMC expressed a desire that all resulting leases be recorded in IMC's name. The idea was that IMC would assign or sublease the property to Denton to mine and take its commission in the form of an overriding royalty interest which would then be taxable at a capital gains rate instead of taxable as ordinary income.

The rate of this royalty was to be somewhere between $0.00 and $1.50 per ton of coal, but an exact figure was never decided upon, and this overriding royalty on the leasehold was to last as long as coal was mined on that property.

Following several other discussions, these matters were reduced to writing by IMC and presented to Denton in early June. Denton, however, did not sign the document. The leases which Denton negotiated and for which they expended acquisition costs and half the drilling costs were

finalized in June and registered in Denton's name.

Now, it is the contention of IMC that they should be granted an overriding royalty on the seven leases known as the "Pleasant Ridge" leases of $.10 per ton of coal pursuant to the joint exploration effort entered into with Denton, and in derogation of that agreement Denton acquired leases in its name rather than IMC's. Thus, IMC maintains that Denton was obligated to acquire the property in the name of IMC, has deprived IMC of a property interest, and that property should be deemed in a constructive trust held by Denton for the benefit of IMC.

The Unsecured Creditors Committee contends that there is no enforceable claim by IMC to any overriding royalty interest, that the facts do not support the imposition of a constructive trust and that IMC is relegated to the status of an unsecured creditor in the amount of $19,542.47.

The United States Bankruptcy Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

The testimony of record refutes the allegation that a joint venture in the strictest sense existed:

Q. What else were you going to put into the joint venture other than the joint exploration costs?

A. It wasn't a joint venture or anything other than a joint exploration. I wouldn't call it a joint venture. We were never in a partnership with Denton and we never had any business relationship with Denton other than strictly a broker. It was a joint exploration effort. And our portion of the exploration effort was to pay one-half of the drilling costs. (Deposition of Mr. John Hanzel, General Counsel and Senior Vice President of Inter-Mountain Coals, p. 23.)

The facts and surrounding circumstances of the case indicate that the parties have the identical view of the conceptual purpose of the relationship—to obtain coal reserves in order to fulfill the contractual require-ments with Mississippi Power Co. to the profit of both parties. At the same time both parties hold opposing views on the technicalities or terms of the understanding reached. Denton assumed that the payment of one half the drilling costs was in the form of a cash advance to be repaid from subsequent coal checks from IMC to Denton as had occurred on at least one previous occasion.

IMC holds the view that the transactions were aimed at a redefinition of the business relationship. As no writing is in evidence, the Court must assume that the meetings and discussions were in the form of negotiations toward that redefinition which was never ratified by Denton.

■ Kentucky case law establishes that where two parties are dealing in land for profit, a confidential relationship is created. Violation of that confidential relationship occurs where one party purchases the land for his individual account with at least partial funds from the other party. That violation will give rise to a constructive trust in favor of the other party. See *Stewart v. Stovall*, 191 Ky. 508, 230 S.W. 929 (1921); *Appleby v. Buck*, 351 S.W.2d 494 (Ky.1961); *Eubank v. Richardson*, 353 S.W.2d 367 (Ky.1962).

■ However, the instant situation is clearly not an advancement of funds for the acquisition of land but was a cash advance for core drilling or exploration costs only. The advancement of these funds was for the purpose of aiding Denton in fulfilling the Mississippi Power contract, thereby enriching IMC while easing Denton's cash flow problem. The name in which the lease was taken was simply to favor IMC so that it could convert a brokerage commission taxed at ordinary income rates into an overriding royalty interest which was taxable as a capital gain. The granting of a property interest was never agreed upon by the parties, nor was the amount of that proposed overriding interest ever determined.

In the case of *O'Bryan v. Bickett*, 419 S.W.2d 726 (Ky.1967), the Court was of the view that where all of the terms and condi-

tions have not been agreed upon, a constructive trust could be imposed if "there was an agreement on the basic framework of their deal." *Ibid*, at 729. Here, however, on neither the details nor the framework was there agreement.

 The doctrine of constructive trust is not applicable in the absence of allegation of fraud, misrepresentation, concealment, undue influence, duress or other wrongful act. *Lowe v. Lowe*, 312 Ky. 640, 229 S.W.2d 442 (1950).

It is the opinion of this court that the sum of $19,542.47 was in the nature of a cash advancement which Denton Coal Company justly owes to Inter-Mountain Coals under the theory of restitution.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, R.B.P.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the objection of the Unsecured Creditors Committee to so much of the agreed order of January 8, 1981, that grants IMC an overriding royalty interest as recited in paragraphs 4, 7 and 8 be and is sustained.

IT IS FURTHER ORDERED AND ADJUDGED that Inter-Mountain Coals be and is allowed to file its unsecured claim in the amount of $19,542.47.