**In re Paul J. MYERS, Debtor.**

**Bankruptcy No. 93–1–1217–PM.**

United States Bankruptcy Court,
D. Maryland.

Feb. 4, 1994.

W.W. Senft, Baltimore, MD, for Paul J. Myers (debtor).

P.J. McNutt of Shulman, Rogers, Gandal, Pordy & Ecker, Rockville, MD, for C.D. Clemente, Chapter 11 Trustee (trustee).

J.S. Hopkins, III of Baker & Hostetler, Washington, DC, for official Committee of Unsecured Creditors (committee).

## MEMORANDUM OF DECISION GRANTING MOTION TO EXTEND TIME TO OBJECT TO DISCHARGE AND DISCHARGEABILITY

FRANCIS G. CONRAD, Bankruptcy Judge *.

In a bench ruling at the December 7, 1993 hearing in this matter, we granted [1] the timely filed motions of Committee and Trustee to extend the time to file complaints objecting to Debtor's discharge under § 727 [2] or to the dischargeability of particular debts under § 523. At that hearing, we ruled that the bar date for § 727 objections to discharge

was the first date set for hearing on plan confirmation, Fed.R.Bkrtcy.P. 4004(a), and extended the time for filing of complaints to determine dischargeability under § 523 until June 30, 1994. This Memorandum of Decision explains the reasons for our bench ruling.

### BACKGROUND

Debtor commenced this voluntary Chapter 11 case on March 4, 1993, after a State-Court appointed receiver seized the books and records of Debtor and his related entities, amid allegations that Debtor had defrauded investors of tens of millions of dollars. Debtor's initial filing with the Court listed only a handful of creditors. He has refused subsequently to supplement that filing with schedules of creditors, assets, and liabilities, or to file a statement of financial affairs, all of which are duties required of him by § 521. [3] Debtor claims his Fifth Amendment right against self-incrimination excuses his compliance with the statutory mandate, and refuses to provide or answer questions about the missing information.

Notice of Debtor's filing, sent to the handful of scheduled creditors, set June 7, 1993 as the bar date for filing of complaints objecting to discharge under § 727 and dischargeability under § 523. Later, Trustee and Committee generated a list of several hundred persons they believe to be creditors of the estate, and who may have grounds to object to discharge or dischargeability. The list was generated from files taken from Debtor's computer. The persons on that list, however, did not receive the customary notice of Debtor's filing with the date of the § 341(a) meeting, and thus missed an important opportunity to examine Debtor. In addition, they were never advised of the bar date for

---

\* Sitting by special designation to the District of Maryland.

1. We have jurisdiction over this matter under 28 USC § 1334(b) and the general reference to this Court under Maryland District Court Local Rule 402. This is a core matter under 28 USC §§ 157(b)(2)(I), (J), and (O).

2. All statutory references are to the Bankruptcy Code, Title 11, USC, unless otherwise specifically indicated.

3. Section 521 provides, in pertinent part:

> The debtor shall—
> (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs....

filing complaints objecting to discharge or dischargeability. Most now know about the bankruptcy itself from a newsletter distributed to them by Committee, but Committee counsel says, they were never advised of the existence or significance of the bar date. Moreover, even had they received timely notice of the bar date, Debtor's refusal to provide financial information mandated by Congress, § 521, significantly impairs their ability to determine whether an objection to discharge or dischargeability is warranted.

Trustee and Committee moved, on behalf of the hundreds of unscheduled investors, to extend the time for filing complaints objecting to discharge and dischargeability. The parties concede the timeliness of the motions to extend the time to object.[4] Debtor objects both that no extension is necessary to protect the unscheduled creditors, and that Committee and Trustee lack standing to move on behalf of the affected investors. We consider first Debtor's contention that no extension is necessary to protect the unscheduled investors, and then turn to Debtor's standing argument.

## DISCUSSION

■ Debtor argues first that no extension of time is necessary with respect to filing of complaints to object to discharge under § 727. Debtor contends that Fed. R.Bkrtcy.P. 4004(a) overrides the June 7, 1993 bar date established by the Court for complaints objecting to discharge. Trustee and Committee agree with Debtor's analysis. Rule 4004(a) provides, in pertinent part:

In a chapter 11 reorganization case, such complaint shall be filed not later than the first date set for the hearing on confirmation. Not less than 25 days notice of the

time so fixed shall be given to the United States trustee and all creditors as provided in Rule 2002(f) and (k) and to the trustee and the trustee's attorney.

The rule is clear and the parties are in agreement. Accordingly, we confirm that the bar date for filing of objections to discharge under § 727[5] is "the first date set for the hearing on confirmation," and not the June 7, 1993 date originally set by the Court.[6]

■ Debtor also contends that the unscheduled investors are adequately protected by § 523(a)(3), and thus extension of the time to file complaints to determine dischargeability of particular debts under § 523 is unnecessary. We disagree. Section 523(a)(3) provides, in pertinent part:

A discharge under section ... 1141 ... does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge

---

**4.** Committee also moved under Rule 9014 to have us order that Rules 7023 and 7024, governing class proceedings and intervention respectively, be applied to this contested matter, and then to authorize the intervention of an unscheduled investor to represent the class of such creditors in connection with the motion to extend time for filing complaints to determine dischargeability. Debtor contends this motion is untimely, because filed well after the June 7 bar date originally set. *See* Rules 4007(a) and 9006(b)(3). We ruled from the bench at the December 7, 1993, hearing that our holding that Trustee and Committee have standing to pursue

an extension of time on behalf of unscheduled creditors moots Committee's motion under Rules 7023 and 7024. We further noted that in the event our ruling extending time is overturned on appeal, we will revisit the issues raised by the mooted motion.

**5.** Confirmation of a plan discharges an individual Chapter 11 debtor unless, *inter alia*, the debtor would be denied a discharge under § 727(a) in a Chapter 7 case.

**6.** We note that § 727(e) sometimes permits revocation of a discharge already granted.

of the case in time for such timely filing and request.

Several hundred creditors known to Debtor were not listed or scheduled as required by § 521(1). Despite the fact that he understands that § 521 requires him to schedule all creditors, liabilities, and assets, and to provide a statement of financial affairs, Debtor has refused to do so. Indeed, he has no present intention of complying with the statutory mandate.[7]

We do not believe that § 523(a)(3) provides an adequate remedy for the affected investors in this situation, because they have been disadvantaged in two ways by the cloak of secrecy Debtor has thrown around his financial dealings. First, they were deprived of timely notice. This disadvantage is partly remedied by § 523(a)(3), which establishes the general rule that debts owed to unscheduled creditors aren't discharged. The remedy is only partial, however, because of the exception to the general rule of non-dischargeability: the debt is discharged in those cases where a creditor, despite lack of official notice, had "actual knowledge of the case in time for … timely filing." Thus, § 523(a)(3) does not put unscheduled creditors in the same position they would have been in if they had been scheduled. Rather, it preserves for them the opportunity to get back to where they would have been if they can surmount the fact-intensive scenario of "actual knowledge." The practical impact of this provision is to give Debtor another avenue of attack against his creditors. He can prevail either on the merits of dischargeability or on the procedural issue of notice. The affected creditors are faced with additional legal hassles that translate to more time and more money. While § 523(a)(3) may do rough justice in the usual case of inadvertent omission of the odd creditor who slips through the cracks, we see no reason to permit the Debtor to advantage himself in this fashion at the expense of the entire body of several hundred creditors. Nor do we see any reason for this Court to waste its time determining several hundred times over whether a particular creditor had "actual knowledge."

We are especially unwilling to permit Debtor's willful disregard of statutory mandates to burden creditors and the Court here because of the second way Debtor's secrecy has disadvantaged these creditors. Debtor not only refuses to list his creditors, but also withholds the basic financial information about himself and his related entities that is necessary for a creditor to determine in the first instance whether to pursue an objection to discharge or dischargeability. Section § 523(a)(3) is an inadequate remedy in these circumstances because, even with notice or "actual knowledge" of the bankruptcy itself, Debtor's secrecy has deprived creditors of information Congress required be made available to them in considering whether to object to discharge or dischargeability.

We turn then to Debtor's contention that the motion to extend time must be denied because Trustee and Committee lack standing to bring it. We disagree for three reasons. First, we believe that the doctrine of standing is really not at issue here because Trustee and Committee are, by duty and by definition, "parties in interest", and not mere intermeddlers asserting the rights of third parties in which they have no interest. Rather, the bringing of this motion is an act squarely within the ambit of their statutory duties and in exercise of their statutory rights. Second, we believe that on the facts of this case, Trustee and Committee would in fact have standing to act as intermeddlers

---

7. The willfulness of Debtor's refusal to provide financial information mandated by Congress is apparent from the following colloquy between the Court and Debtor's counsel at the December 7, 1993, hearing:

MR. SENFT: … The debtor has not filed schedules and a statement of financial affairs.

THE COURT: Even though he has an obligation to do that?

MR. SENFT: He understands that, Your Honor.

THE COURT: And he has not done that?

MR. SENFT: That's correct.

THE COURT: Why should he even be here? Why shouldn't he just be denied his discharge? What's the problem? He has an obligation to do that.

MR. SENFT: I understand and the debtor understands that obligation. Perhaps the debtor will be filing schedules and a statement of financial affairs. The debtor is currently the subject of an investigation and has concern regarding his Fifth Amendment privilege and the waiver thereof.

and raise the rights of unscheduled creditors, even were they not statutory "parties in interest." Finally, we believe that we have the power and obligation under § 105(a) to extend time in order to carry out the provisions of Title 11. Each of these three independent rationales for granting the motion to extend time will be discussed in turn.

Section 523(a) contains a list of various kinds of debts which are not dischargeable in bankruptcy. The legislative history to § 523(a) explains that the "Rules of Bankruptcy Procedure will specify ... who may request determinations of dischargeability, subject, of course, to ... 11 USC 523(c),[8] and when such a request may be made." HR Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977), *quoted in* Norton Bankruptcy Code Pamphlet 1993–94 Ed., 440. Fed. R.Bkrtcy.P. 4007 does indeed specify who may request such determinations and when the request may be made. Rule 4007(a) provides, "A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt." The complaint ordinarily must be filed "not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Rule 4007(c). Although section (a) limits the right to file a complaint to debtors and creditors, section (c) authorizes "any party in interest" to move to extend the time within which debtors or creditors may file complaints, although it does not permit such other parties in interest to file dischargeability complaints.

**8.** § 523(c) provides, in pertinent part:
(1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

**9.** *Farmer* concludes that because the trustee "may not object to dischargeability under section 523," the trustee has "no statutory basis for asserting an interest in extending the time for such objections." *Farmer*, 786 F.2d at 620. This conclusion rests in part on a mistaken reading of § 523(c) and an overlooking of the legislative

Debtor argues that neither Committee nor Trustee is a "party in interest" within the meaning of Rule 4007(c). Debtor's argument relies on *Matter of Farmer*, 786 F.2d 618 (4th Cir.1986). In that case, the Fourth Circuit concluded that the Chapter 7 Trustee was not a "party in interest" within the meaning of Rule 4007(c) because the Trustee had "neither financial interest in [the] matter nor duties imposed by statute." *Id.*, at 621. The results in both *Farmer* and *In re Overmyer*, 26 B.R. 755 (Bkrtcy. S.D.N.Y.1982), on which *Farmer* heavily relies, are at odds with their shared rationale, which in turn rests on what appears to us to be a fundamental error of law. *In re Bosse*, 122 B.R. 410, 416 n. 3 (Bkrtcy.C.D.Cal.1990). A Chapter 7 trustee "has no economic interest in obtaining an extension of time for creditors to pursue the nondischargeability of their claims," both cases say, because

[t]he trustee acts for all the creditors so as to maximize the distribution from the estate. The trustee distributes the property of the estate in accordance with the formula prescribed under 11 USC § 726. A nondischargeable debt is not satisfied from the estate to the detriment of the other creditors. A creditor holding a nondischargeable debt must look to the debtor's post-petition assets, which are of no interest to the trustee in bankruptcy.

Economic interest is a rational means by which the scope of a trustee's duties may be measured. When a trustee has neither financial interest in a matter nor duties imposed by statute,[9] then a trustee is not a "party in interest."

history to § 523(a), noted above. *Farmer* contrasts § 523 with § 727, observing, "Under section 523(c) only a creditor may object to the dischargeability of a specific debt," while § 727 gives the trustee the right to object to a debtor's discharge. *Id.* In fact, § 523(c)(1) covers only three specific types of nondischargeable debts, and says merely that as to those three kinds of debts, only "the creditor to whom such debt is owed" may request a hearing on dischargeability. The legislative history to § 523(a) plainly mandates that, except for § 523(c), the Rules, not the Code, define who may file a § 523 dischargeability complaint, and when they may file it. Rule 4007(a) authorizes only debtors and creditors to file complaints. Rule 4007(c) authorizes "*any* party in interest" to ask for more time for debtors and creditors to file their complaints.

*Farmer, supra,* 786 F.2d at 620–21 (citations omitted), quoting *Overmyer,* 26 B.R. at 758. If the Trustee's duty is to maximize distributions to creditors, and if nondischargeable debts don't share in distributions, then it would appear to us that a Chapter 7 trustee does indeed have an economic interest in making sure that creditors with valid claims have every opportunity to contest dischargeability. An increase in nondischargeable debt would increase the *pro rata* distribution to creditors owed debts that are dischargeable. In fact, however, nondischargeable debts do share in estate distributions *pro rata* with dischargeable debts of the same class. *See e.g. In re Bosse,* 122 B.R. at 416 (§ 726(a)(2)(C) permits debts nondischargeable under § 523(a)(3) to share in estate distributions); *In re Lawson,* 93 B.R. 979, 989, 990 (Bkrtcy.N.D.Ill.1988) (nondischargeable debts share *pro rata* in Chapter 7 estate distributions with other unsecured claims; payment of nondischargeable debt *pro rata* with other unsecured claims not in bad faith under Chapter 13); *In re Howell,* 84 B.R. 834, 835–37 (Bkrtcy.M.D.Fla.1988) ("creditor holding a nondischargeable debt is entitled to participate in any distribution made under a plan to similarly situated creditors"); 11 USC § 1328(a)(2) (providing for discharge of certain debts made nondischargeable by § 523 upon completion of all Chapter 13 plan payments). *Overmyer's* naked assertion that "nondischargeable debt is not satisfied from the estate," but from debtor's post-petition assets, *Overmyer,* 26 B.R. at 758, is unsupported by any authority,[10] and was echoed by *Farmer,* 786 F.2d at 621, and by *In re Lagrotteria,* 42 B.R. 867, 869 (Bkrtcy.S.D.Ill. 1984), *aff'd* 43 BR 1007 (N.D.Ill.1984), upon which *Farmer* also relies.

Right or wrong, *Farmer* is the law of this Circuit, and we are bound to apply it fairly

here. *Farmer* itself "impliedly recognized," however, that the result it reached in a Chapter 7 case "would create a conflict among the various sections of the Code and Rules if applied in a Chapter 11 case." *In re Linn,* 88 B.R. 365, 368 (Bkrtcy.W.D.Okla.1988), *citing Farmer,* 786 F.2d at 620 n. 1. *Farmer* raises the possibility that a different result might be warranted in a Chapter 11 context, because of two factors: First, Chapter 11 includes § 1109, entitled "Right to be heard," which has no counterpart in Chapter 7. Second, the Chapter 11 Trustee's "ongoing duties in a reorganization process" are broader than those of a Chapter 7 Trustee.[11] *Farmer,* 786 F.2d at 620 n. 1. Section 1109 provides, in pertinent part:

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

This matter fits squarely within the confines of § 1109(b), which specifically authorizes both Trustee and Committee to raise, appear, and be heard on any issue in a Chapter 11 case. Moreover, filing of the motion to extend time is well within the ambit of the statutory duties of both Committee and Trustee. The Committee is authorized by § 1103(c)(2) "to investigate the acts and conduct, among other aspects of a debtor," *Linn,* 88 B.R. at 367, and by § 1103(c)(5) to "perform such other services as are in the interest of those represented." The Committee represents the Debtor's unsecured creditors, the vast majority of whom were not scheduled by Debtor. The unscheduled creditors plainly have an interest at stake in preserving undiminished their ability to file dischargeability complaints. The Committee

---

10. We are aware of no Code provision that excludes nondischargeable debt from estate distributions. The legislative history of § 501(c) says the provision was enacted specifically to enable debtors to file proofs of claim for creditors with nondischargeable debts so those debts can be "paid in part or in full in the case or under the plan." HR Rep. No. 95–595, 95th Cong., 1st Sess. 351 (1977), *quoted in* Norton Bankruptcy Code Pamphlet 1993–94 Ed., 334. Moreover, § 1328(a)(2) authorizes discharge of all but three of the types of debt made dischargeable by § 523

"after completion by the debtor of all payments under the plan," from which we infer that payments are to be made to the holders of that nondischargeable debt.

11. A Chapter 11 Trustee is required to perform most of the duties of a Chapter 7 Trustee, in addition to a set of duties unique to Chapter 11. *Compare* § 1106 (duties of Chapter 11 Trustee) with § 704 (duties of Chapter 7 Trustee).

is clearly serving the interests of those it represents in its efforts to investigate the Debtor's financial affairs, to discover the identifies of the unscheduled creditors, and to preserve their rights by bringing on the instant motion. *Linn,* 88 B.R. at 367–68.

Similarly, § 1106 requires the Chapter 11 Trustee to

> investigate the *acts, conduct,* assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and *any other matter relevant to the case* or to the formulation of a plan. . . .

(Emphasis added.) Debtor's refusal to schedule creditors, assets, and liabilities, or to provide basic financial information, is a matter relevant to the case. Trustee is not required to investigate merely to inform himself. If he concludes that Debtor's refusal to do what the law demands disadvantages several hundred creditors for whose benefit the law demands that Debtor do it, then Trustee is authorized by § 1109(b) to raise the matter with the Court, and to seek an appropriate remedy. Thus we conclude that far from being intermeddlers asserting the rights of others, Trustee and Committee are fulfilling their required statutory duties and exercising their statutory rights. Accordingly, we find that both Trustee and Committee are parties in interest under Rule 4007(c) for the purpose of requesting an extension of time for filing of complaints to determine nondischargeability.

█ Despite the clear mandate of § 1109(b), which appears to confer on parties in interest the right to raise, appear, and be heard on any issue arising in a Chapter 11 case, courts are, with increasing frequency, using the doctrine of standing to cut off parties who attempt to raise the rights of other parties who have not advanced their own interests. The resort to standing is especially pronounced in the area of objections to plan confirmation. *See In re West-*

*wood Plaza Apartments,* 147 B.R. 692, 698 (Bkrtcy.E.D.Tex.1992) ("creditors lack standing to challenge provisions of a plan that do not affect them"); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 717, 721 (Bkrtcy.S.D.N.Y.1992) (" 'a party who is not directly 'aggrieved' by the construction of a provision of the Plan would lack the requisite standing.' ", quoting *In re Johns–Manville Corp.,* 68 B.R. 618, 623–24 (Bkrtcy.S.D.N.Y. 1986));[12] *In re B. Cohen & Sons Caterers, Inc.,* 124 B.R. 642, 647 (E.D.Pa.1991) ("creditors lack standing to challenge those portions of a reorganization plan that do not affect their direct interest"); *In re Orlando Investors, L.P.,* 103 B.R. 593, 596–97 (Bkrtcy. E.D.Pa.1989) ("statutory right to be heard on an issue" does not include "the right to assert interests possessed solely by others"); *In re Wonder Corp.,* 70 B.R. 1018, 1023–24 (Bkrtcy.D.Conn.1987) (conclusive presumption of § 1126(f) that unimpaired creditors have accepted plan deprives them of standing to object to confirmation).

In *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 643–44 (2d Cir.1988), the Second Circuit considered at length the applicability of the standing doctrine to bankruptcy proceedings:

> Generally, litigants in federal court are barred from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves. Though this limitation is not dictated by the Article III case or controversy requirement, the third-party standing doctrine has been considered a valuable prudential limitation, self-imposed by the federal courts. In *Singleton [v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ], the Supreme Court articulated two important policies justifying such a limitation: "first, the courts should not adjudicate [third-party] rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or

---

**12.** Note that in *Drexel,* the objections raised by the dissenting creditors were first denied on the merits, then as an alternative ground, the Court held they lacked standing. On appeal, the District Court affirmed on the merits, but, in a footnote, overruled the holding on standing. *In re Drexel Burnham Lambert Group, Inc.,* 140 B.R.

347, 349 n. 1 (S.D.N.Y.1992). The unrepentant Bankruptcy Judge who issued the original opinion continues to believe that his holding on standing was correct, especially in light of the Second Circuit's opinion in *Kane v. Johns–Manville Corp.,* 843 F.2d 636 (2d Cir.1988), discussed *infra.*

will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights." [*Id.*, 428 U.S. at 113–14, 96 S.Ct. at 2873.] The Supreme Court has recognized that under some special circumstances these concerns are not present. Thus, where the litigant's interests are closely allied with those of the third parties, standing is permitted because the litigant is likely to be as effective a proponent of the third-party rights as the third parties themselves. Furthermore, where third parties are unable to assert their own rights, current litigants are allowed to assert third-party claims that might otherwise remain unvindicated. However, where these special considerations are absent, a litigant is restricted to asserting his own constitutional and statutory rights.

The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.

In this case, the "two important policies justifying" the standing limitation are wholly absent. Neither Trustee nor Committee is seeking to advance the interests of the unscheduled creditors to redress injury to themselves. Nor, indeed, are they even attempting to adjudicate the rights of those creditors. Rather, they seek merely to preserve unimpaired the opportunity for Debtor's investors to adjudicate their own rights. Moreover, the interests of Committee and Trustee are "closely allied" with those of the unscheduled creditors whose interests they represent. Finally, Debtor's refusal to schedule creditors made it impossible for them to assert their own rights, which would have been denied or impaired had Committee and Trustee not brought this motion. Accordingly, on the facts of this case, we hold that both Trustee and Committee have standing to move to extend time for creditors to file dischargeability complaints.

As an alternative ground for extending time we rely on § 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Debtor voluntarily filed the petition commencing this case. He has the statutory duty to "file a list of creditors, ... a schedule of assets and liabilities, a schedule of current income and current expenditures." § 521(1). Rule 1007 requires that Debtor provide the information within 15 days of filing the petition. Moreover, Debtor is obliged to surrender to the trustee "any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not" Debtor is granted immunity from self-incrimination under § 344. Rule 4007(c) entitles Debtor's creditors to 30 days' notice of the bar date for filing dischargeability complaints, which is, unless extended, 60 days following the first meeting of creditors. This timing ensures that creditors have ample time to review the information provided by Debtor, to examine him at the meeting of creditors, and determine whether the circumstances warrant pursuit of a dischargeability complaint. Debtor refused to identify his creditors, preventing them from receiving timely notice of the bar date. Debtor refuses to provide the information creditors need to determine whether to exercise their rights. Debtor's refusal to comply with the provisions of the Bankruptcy Code makes it necessary to extend the time for creditors to file complaints to determine dischargeability in order to provide Debtor's creditors with the benefits accorded them by the Code and Rules, and to prevent an abuse of process. The Fourth Circuit has approved the analogous use of § 105(a) to extend time to file objections to exemptions claimed by a debtor.

*Ragsdale v. Genesco,* 674 F.2d 277, 278 (4th Cir.1982).[13]

For the foregoing reasons, we granted the motions of Trustee and Committee to extend the time until June 30, 1994. As noted in our December 7, 1993, bench ruling, the time for appeal shall begin to run upon entry of this Memorandum of Decision.

---

**13.** *Taylor v. Freeland & Kronz,* — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), which held that the validity of a debtor's claim of exemptions could not be contested after expiration of the 30–day period for objection, declined to reach the issue of whether the period could be extended under § 105(a), as authorized by *Ragsdale. Taylor,* — U.S. at —, 112 S.Ct. at 1649.