KENNEDY, Circuit Judge.
 

 This appeal challenges a District Court order (1) affirming the refusal of the Bankruptcy Court to dismiss the adversary proceeding commenced against bankruptcy debtor and appellant James A Brady (“debt- or”) by creditor and appellee Donald T. McAllister (“creditor”); and (2) affirming the finding of the Bankruptcy Court that debtor owes a nondisehargeable debt to creditor. For the following reasons, we AFFIRM.
 

 I. Facts
 

 In July or August, 1991, debtor filed for protection under Chapter 11 of the Bankruptcy Code. After these proceedings were converted into Chapter 7 proceedings, the Bankruptcy Court issued an order setting the creditors’ meeting for May 22, 1992 and the deadline for filing nondischargeability complaints as July 21, 1992. On July 20, 1992, the trustee for the bankruptcy estate filed a motion which stated:
 

 Comes the Trustee, by counsel, and moves the Court to extend the date for filing non-discharge complaints in the aforestated case for the period of 90 days, or through and including October 21,1992. In support of this motion the Trustee states that he has not yet determined whether a non-discharge complaint is appropriate in this case but believes that by October 21, 1992 sufficient investigation and discovery of facts will have occurred to determine whether a non-discharge complaint is appropriate.
 

 The Bankruptcy Court granted the trustee’s motion on July 23,1992 by entering an order tendered by the trustee. The order provided “that the Trustee in bankruptcy for James A. Brady shall, on behalf of the estate and all unsecured or undersecured creditors of the estate, have through and including October 21, 1992 in which to file non-dischargeability complaints in the aforesaid case.”
 

 On October 20, 1992 creditor filed a complaint under 11 U.S.C. § 523(c) alleging that debtor owed to him a nondisehargeable debt of $40,000. Creditor filed an amended complaint on October 21, 1992. On December 7, 1992, debtor filed a motion to dismiss the complaint on the grounds of untimeliness. The Bankruptcy Court denied the motion to dismiss in an order entered on January 12, 1993. The order of the Bankruptcy Court explained:
 

 This Court holds that its previous order of July 23, 1992 on the trustee’s motion to extend the time for filing nondischargeability actions under 11 U.S.C. § 523 was intended to extend the time for filing 11 U.S.C. § 523 to all creditors including McAllister and that therefore McAllister’s complaint under 11 U.S.C. § 523 was timely filed.
 

 
 *1168
 
 The parties eventually tried the instant nondischargeability action on- its merits before the Bankruptcy Court on May 18, 1994. The following facts emerged at trial:
 

 Prior to the sale of property at issue in this case, creditor and debtor had engaged in several real estate transactions. Creditor was a limited partner in Ralliana Group I Partnership, Ltd. (“Group I”), an entity which sought to obtain land and develop Rally’s restaurants. In order to further this effort, creditor agreed to finance the purchase of some restaurant sites with KAK Real Estate, Inc. (“KAK-REI”), a corporation of which debtor was president. Creditor and KAK-REI initially bought a piece of real estate in Indiana and leased this property to Group I. Because the state of Indiana condemned a portion of this property for highway improvements, however, the land was sold and the sale proceeds were distributed to creditor, KAK-REI and Group I.
 

 After this transaction, debtor approached creditor about a similar purchase of land in Denver, Colorado. Creditor orally agreed to help finance the purchase of this restaurant site. Creditor and debtor further agreed orally that creditor and KAK-REI each would tender $90,000 of the purchase price and would receive a 50% share of any proceeds from a subsequent sale. On May 1, 1990, creditor and KAK-REI purchased the Denver site for $180,000.
 

 On December 28, 1990, Dr. Walter Morris purchased the Denver site from creditor and KAK-REI, through debtor, for $290,000. Debtor executed the sale documents and told creditor that the purchase price was $210,-000. Debtor deposited the $290,000 from Morris into a bank account which he and creditor jointly held. Debtor then wrote a check to creditor for $105,000, representing that this amount constituted one-half of the net sales proceeds, even though it in fact constituted $40,000 less than one-half of the net sales proceeds. Debtor also wrote a check to KAK-REI for $185,000, of which Group I eventually received $80,000.
 

 Debtor testified that he personally did not receive any of the proceeds of the Denver sale. He also testified that he spent $80,000 of the net sales proceeds on related site improvements, according to an understanding between Morris and himself. Morris, however, testified that he was unaware of any such agreement.
 

 On August 29,1994, the Bankruptcy Court issued a memorandum opinion which held that debtor owed a nondischargeable debt of $40,000 to creditor under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). On September 7, 1994 debtor filed under 28 U.S.C. § 158(a) an appeal of the decision of the Bankruptcy Court to the District Court. Debtor argued before the District Court that the Bankruptcy Court should have dismissed creditor’s complaint as untimely, and that he did not owe a nondischargeable debt to creditor. On September 28,1995, the District Court issued an opinion and order affirming the Bankruptcy Court’s decision. Debtor has filed under 28 U.S.C. § 158(d) a timely appeal of the decision by the District Court.
 

 II. Analysis
 

 A. Whether creditor’s complaint was untimely
 

 The initial deadline for filing nondischarge-ability complaints was on or before July 21, 1992. Because creditor did not file his non-dischargeability complaint until October 20, 1992, debtor argues that the Bankruptcy Court should have dismissed the complaint as untimely. Although the Bankruptcy Court issued an order on July 23,1992 granting the trustee’s July 20, 1992 motion to extend the deadline for filing “non-discharge complaints” to October 21, 1992, debtor urges that this order did not and could not extend to creditor more time in which to file his complaint.
 

 Because debtor’s claim requires interpretation of both the Bankruptcy Court’s July 23, 1993 order and provisions of the Bankruptcy Code, it presents questions of law. We therefore review
 
 de novo
 
 the refusal of the Bankruptcy Court to dismiss creditor’s complaint.
 
 See Stewart v. East Tenn. Title Ins. Agency, Inc. (In re Union Sec. Mortgage Co.),
 
 25 F.3d 338, 340 (6th Cir.1994).
 

 
 *1169
 
 1. Whether the Bankruptcy Court meant to grant a time extension
 

 Debtor first asserts that the combined terms of the trustee’s motion and the Bankruptcy Court’s order demonstrate that the Bankruptcy Court (1) granted only to the trustee an extension of time in which to object under 11 U.S.C. § 727(c) to the discharge of the debtor, and (2) did not grant to all creditors an extension of time in which to file complaints under 11 U.S.C. § 523 to determine the dischargeability of debts. Debt- or notes that the trustee’s motion for an extension of time referred only to the trustee and to “non-discharge complaints,” did not mention creditors, and did not state under which rule or statute the trustee was proceeding. Debtor also urges that the order of the Bankruptcy Court, which provided that “the Trustee in bankruptcy for James A. Brady shall, on behalf of the estate and all unsecured or underseeured creditors of the estate, have through and including October 21, 1992 in which to file non-dischargeability complaints in the aforesaid case,” revealed a “plain” intent to grant an extension of time only to the trustee, rather than to creditors. Because a trustee may object to the ultimate discharge of a debtor,
 
 see
 
 11 U.S.C. § 727(c)(1), but cannot file nondisehargeability complaints regarding particular debts,
 
 see
 
 Bankruptcy Rule 4007(a), debtor concludes that the motion and order at issue did not seek to provide creditors with additional time in which to file nondisehargeability complaints.
 

 We cannot agree that the creditors never received an extension of time in which to file nondisehargeability complaints. As noted, the Bankruptcy Court indicated in a January 12, 1993 order that the order granting the trustee’s motion in fact extended the time for all creditors to file nondisehargeability complaints. Although the order and the trustee’s motion are somewhat ambiguous, they are able to bear the interpretation of the Bankruptcy Court. The motion referred to a “non-discharge complaint,” not to an “objection to discharge.” Further, the order provided that the trustee had secured additional time for filing nondisehargeability complaints “on behalf of the estate and all unsecured or undersecured creditors of the estate.” We therefore decline to contradict the Bankruptcy Court’s interpretation of its own order.
 

 2. Whether the Bankruptcy Court could grant a time extension
 

 Debtor argues in the alternative that, regardless of the actual intent of the trustee and the Bankruptcy Court, the July 23, 1992 order is invalid because the trustee lacked standing to request an extension of time on behalf of any creditor to file a nondischargeability complaint.
 

 Bankruptcy Rule 4007(a) states that “[a] debtor or any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt.” Likewise, 11 U.S.C. § 523(c)(1) allows creditors to request determinations regarding the dis-chargeability of certain debts. Bankruptcy Rule 4007 controls the timing of such dis-chargeability complaints:
 

 (c) Time for filing complaint under § 523(c) in chapter 7 liquidation and chapter 11 reorganization cases; notices of time fixed
 

 A complaint to determine the discharge-ability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002.
 
 On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision.
 
 The motion shall be made before the time has expired.
 

 Bankruptcy Rule 4007(c) (emphasis added).
 

 Debtor asserts that a Chapter 7 trustee may not move to extend the time for creditors to file nondisehargeability complaints because a Chapter 7 trustee is not a “party in interest” under Rule 4007(c). Debtor emphasizes that the Fourth Circuit already has reached this precise conclusion.
 
 See In re Farmer,
 
 786 F.2d 618 (1986);
 
 see also Fed. Deposit Ins. Corp. v. Kirsch (In re Kirsch),
 
 65 B.R. 297, 300 (Bankr.N.D.Ill.1986) (following
 
 Farmer).
 
 For the reasons that follow,
 
 *1170
 
 however, we reject the holding of the Fourth Circuit in
 
 Farmer
 
 and hold that a Chapter 7 bankruptcy trustee has standing under Rule 4007(c) to move for an extension of time on behalf of creditors to file nondisehargeability complaints.
 

 The
 
 Farmer
 
 opinion stresses that a trustee lacks a statutory basis for asserting an interest in extending the time for filing nondis-chargeability complaints because a trustee may not file such complaints on behalf of a creditor.
 
 See Farmer,
 
 786 F.2d at 620. The
 
 Farmer
 
 opinion is correct that a trustee may not file a nondisehargeability complaint. The fact remains, however, that while Bankruptcy Rule 4007(a) explicitly restricts the ability to file complaints to “debtors and creditors,” Bankruptcy Rule 4007(c) more broadly provides that “any party in interest” may move for an extension of time in which to file nondisehargeability complaints.
 
 See In re Linn,
 
 88 B.R. 365, 368 (Bankr.W.D.Okla.1988) (noting that “restriction of the meaning of Rule 4007(c) would make the difference in the phrasing of Rule 4007(a) and 4007(c) meaningless”). Further,
 
 Farmer
 
 itself indicated that a parent company whose wholly-owned subsidiary is a creditor of a Chapter 7 debtor is a “party in interest” under Rule 4007(c) even though the parent company cannot file a dischargeability complaint.
 
 See Farmer,
 
 786 F.2d at 620 n. 2. Even under
 
 Farmer,
 
 therefore, the inability to file a non-dischargeability complaint does not preclude the ability to request additional time to file such a complaint.
 

 Farmer
 
 attempts to distinguish a trustee and a parent company by asserting that a trustee, unlike a parent company, “has no economic interest in obtaining an extension of time for creditors to pursue the nondischargeability of their claims” because nondischargeable debts are not satisfied through the assets of the estate.
 
 See Farmer,
 
 786 F.2d at 620-21 (quoting
 
 In re Overmyer,
 
 26 B.R. 755, 758 (Bankr.S.D.N.Y.1982)). This crucial assumption is, we believe, incorrect: “nondisehargeable debts do share in estate distributions pro rata with dischargeable debts of the same class.”
 
 In re Myers,
 
 168 B.R. 856, 861 (Bankr.D.Md.1994) (acknowledging
 
 Farmer
 
 as binding precedent but criticizing it and holding that Chapter 11 trustee and creditors’ committee have standing under Rule 4007(c));
 
 see also Spilka v. Bosse (In re Bosse),
 
 122 B.R. 410, 416 n. 3 (Bankr.C.D.Cal.1990) (noting that creditor with non-dischargeable debt may participate in distribution of estate assets under 11 U.S.C. § 726(a)(2)(e), and claiming that
 
 Farmer
 
 and the precedent upon which it relies “ignore legislative history and reveal no statutory analysis or policy considerations”).
 

 Similar to
 
 Myers, supra,
 
 another court has distinguished
 
 Farmer
 
 in order to hold that a creditors’ committee in a Chapter 11 case has standing to request an extension of time for all creditors to file nondisehargeability complaints.
 
 See In re Linn,
 
 88 B.R. 365 at 368. To distinguish
 
 Farmer,
 
 the
 
 Linn
 
 Court in part emphasized the differences between Chapter 7 and Chapter 11 proceedings.
 
 See id.
 
 Rule 4007(c) itself, however, does not differentiate between Chapter 7 and Chapter 11 cases when referring to a “party in interest.” If the analysis in
 
 Farmer
 
 does define a “party in interest” according to whether the debtor happens to be proceeding under Chapter 7 or Chapter 11, it invests Rule 4007(c) with a directive not present in the explicit language of the rule.
 

 Admittedly, while 11 U.S.C. §§ 1109(b) and 1121(e) expressly include a trustee within the definition of a “party in interest” for the purposes of Chapter 11 proceedings,
 
 see Farmer,
 
 786 F.2d at 620 n. 1, the Code lacks a similar provision for the purposes of Chapter 7 proceedings.
 
 See id.
 
 The Code, however, never defines a “party in interest” at all for the purposes of Chapter 7. Indeed, sections 1109(b) and 1121(c) are the
 
 only
 
 provisions in the Code which define a “party in interest.” The lack of a provision explicitly defining a “party in interest” to include a trustee for the purposes of Chapter 7 therefore does not demonstrate that a trustee is a “party in interest” only in Chapter 11 proceedings.
 

 Depriving the trustee of standing to secure additional time for creditors to file nondis-chargeability complaints could undermine the efficient administration of bankruptcy proceedings. For example, some Chapter 7 cases will involve hundreds or perhaps even
 
 *1171
 
 thousands of creditors who suspect that they have suffered from an elaborate scheme of consumer or securities fraud by the debtor. Forcing each creditor to file an individual motion for an extension of time in which to investigate the basis for a nondischargeability complaint would impose a costly, time-consuming and confusing burden upon the parties and the court. This burden is unnecessary if the trustee, a unique party with comprehensive knowledge of the ease and the best ability to communicate with other interested parties, can file a single motion on behalf of all creditors. Further, allowing the trustee to request an extension of time under Rule 4007(c) will not delay bankruptcy proceedings unnecessarily because parties requesting such an extension still must demonstrate some minimally sufficient showing of cause for the extension.
 
 E.g., In re James,
 
 187 B.R. 395, 397 (Bankr.N.D.Ga.1995);
 
 In re Dekelata,
 
 149 B.R. 115, 116 (Bankr.E.D.Mch.1993).
 
 [1]
 

 The fact that a Chapter 7 trustee has a duty under 11 U.S.C. § 704 to investigate the financial affairs of a debtor further suggests that a trustee has standing under Rule 4007(c) to move to extend the time needed for such an investigation. Although
 
 Farmer
 
 dismisses this investigatory duty as unable to “give the trustee power that another portion of the Code denies,”
 
 see Farmer,
 
 786 F.2d at 621, whether the Code or the Rules in fact deny a trustee the ability to secure more time to determine the appropriateness of nondisehargeability complaints is the very issue at hand.
 

 We conclude therefore that because the trastee successfully secured on his behalf an extension of time in which to file, creditor did not file a late nondisehargeability complaint.
 
 Cf. Marshall v. Demos (In re Demos),
 
 57 F.3d 1037, 1037-040, 1040 n. 5 (11th Cir.1995) (creditor could rely upon “validly entered” court order granting motion by Chapter 7 trustee to extend the time for all creditors to file nondisehargeability complaints);
 
 but cf. Flanagan v. Herring (In re Herring),
 
 116 B.R. 313, 315 (Bankr.N.D.Ga.1990) (declining to reject
 
 Farmer
 
 but nonetheless holding that creditor reasonably relied upon order granting trustee’s motion for extension of time for all creditors to file nondisehargeability complaints when debtor failed to appeal the order).
 
 [2]
 
 In view of this finding, it is unnecessary to address the claim by creditor that the Bankruptcy Court could employ 11 U.S.C. § 105 to extend
 
 sua sponte
 
 the time in which creditor had to file an otherwise untimely nondisehargeability complaint.
 

 B. Whether debtor owes creditor a nondischargeable debt
 

 Debtor claims that the factual findings of the Bankruptcy Court cannot sustain a conclusion that his debt to creditor is non-dischargeable. Because this claim requires interpretation of the legal implications of the Bankruptcy Court’s findings of fact, we review
 
 de novo
 
 the decision of the Bankruptcy Court that the debt at issue is nondischargeable.
 
 See Stewart,
 
 25 F.3d at 340.
 

 1. False pretenses
 

 A debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) if it is for money
 
 *1172
 
 “obtained by ... false pretenses, a false representation, or actual fraud ...” In particular, a plaintiff proceeding under section 523(a)(2)(A) must demonstrate
 

 that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor’s intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of loss.
 

 Atassi v. McLaren (In re McLaren),
 
 990 F.2d 850, 852 (6th Cir.1993) (quoting
 
 Coman v. Phillips (In re Phillips),
 
 804 F.2d 930, 932 (6th Cir.1986)). A plaintiff must show that a debt is nondisehargeable by a preponderance of the evidence.
 
 Id.
 
 at 853
 

 The Bankruptcy Court found under section 523(a)(2)(A) that debtor owes creditor a non-disehargeable debt of $40,000. Debtor argues that this finding was erroneous because the Bankruptcy Court never found that debt- or “obtained” any money from the sale of the Denver property. Debtor asserts that Bankruptcy Court instead found only that all proceeds of the Denver sale went to either creditor, KAK-REI or Group I.
 

 The Bankruptcy Court, however, found that debtor misrepresented the sale price of the Denver property to creditor and then “secretly transferred the ‘excess’ sales proceeds to another corporation controlled by” debtor. Assuming that a plaintiff proceeding under section 523(a)(2)(A) must show that the debtor directly or indirectly obtained some tangible or intangible financial benefit as a result of his misrepresentation,
 
 see McHenry v. Ward (In re Ward),
 
 115 B.R. 532, 538 (W.D.Mich.1990);
 
 Simmons v. Wade (In re Wade),
 
 43 B.R. 976, 981-82 (Bankr.D.Colo.1984),
 
 [3]
 
 creditor has proven that debtor “obtained” money through his misrepresentations by showing that debtor infused a corporation which he controlled with $40,000. For example, the debtor in
 
 Ashley v. Church (In re Ashley),
 
 903 F.2d 599, 604 (9th Cir.1990), had induced creditors to loan money to a financially-troubled coiporation in which he also had invested in order to keep the corporation viable and thereby further his plan to use the corporation to gain a foothold in the industry. Although the debtor’s link with the loan recipient was “slightly attenuated,”
 
 id.,
 
 he nonetheless obtained money under section 523(a)(2)(A) through his misrepresentations because he either was sufficiently related to the corporation to be considered a loan recipient himself, or, if not a recipient of the loan, profited because he had a financial interest in the corporation.
 
 Id.
 
 at 604 n. 5. In the instant case, debtor, who controlled and was the president of the recipient of creditor’s diverted funds, profited even more directly than the debtor in
 
 Ashley. See also Bates v. Winfree (In re Winfree),
 
 34 B.R. 879, 883 (Bankr.M.D.Tenn.1983) (shareholder, officer and director of corporation who fraudulently induces a loan to the corporation obtains a benefit under section 523(a)(2)(A)). We therefore reject debtor’s implication that a debt is nondisehargeable under section 523(a)(2)(A) only when the creditor proves that the debtor directly and personally received every dollar lost by the creditor.
 
 But see Ballard v. Grubbs (In re Grubbs),
 
 9 B.R. 499, 501 (M.D.Ga.1981) (stating that “ ‘obtaining money' [under section 523(a)(2)(A) ] is capable of but one meaning, that is the direct transfer of money from a creditor to a debt- or”).
 

 2. Embezzlement
 

 The Bankruptcy Court further found under 11 U.S.C. § 523(a)(4) that debt- or incurred a nondisehargeable debt by embezzling $40,000 from creditor. Federal law defines “embezzlement” under section 523(a)(4) as “the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it
 
 *1173
 
 has lawfully come.”
 
 Gribble v. Carlton (In re Carlton),
 
 26 B.R. 202, 205 (Bankr.M.D.Tenn.1982) (quoting
 
 Moore v. United States,
 
 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)). A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.
 
 Ball v. McDowell (In re McDowell),
 
 162 B.R. 136, 140 (Bankr.N.D.Ohio 1993).
 

 In an argument similar to his denial that he obtained money under false pretenses, debtor asserts that he did not embezzle under section 523(a)(4) because the Bankruptcy Court did not find that he appropriated funds for his own benefit. As noted, however, the Bankruptcy Court found that debtor secretly took funds constituting part of creditor’s individual share of the sale proceeds from an account held jointly by creditor and debtor and transferred those funds to a corporation controlled by debtor. Even if debtor did not deposit the $40,000 directly into his own account, he disregarded creditor’s wishes concerning the proper disbursal of the funds and instead used the money to improve the finances of a corporation which he controlled and of which he was the president. We therefore reject the implication by debtor that the “appropriation” requirement for embezzlement under section 523(a)(4) demands a showing that the debtor individually profited in an amount equal to that lost by the creditor. Regardless of whether debtor elected to deposit the property of creditor into his own bank account or into the account of his corporation, debtor fraudulently appropriated the property for his own use.
 

 Debtor also claims that the Bankruptcy Court should not have ruled on the issue of embezzlement because creditor failed to allege embezzlement in his complaints or in his pre-and post-trial briefs. Debtor, however, is simply incorrect that creditor did not raise explicitly a claim of embezzlement under section 523(a)(4) in his initial and amended complaints. Given this fact, the extreme similarity of all of creditor’s claims, and the fact that both the Bankruptcy Court and the District Court ruled on the merits of the embezzlement claim, we need not ignore the issue of embezzlement.
 
 Cf. Rubel v. Brimacombe & Schlecte, P.C.,
 
 86 B.R. 81, 83 (E.D.Mich.1988) (district court could review argument raised for first time on appeal because it could review all legal conclusions upon which bankruptcy court based its decision).
 

 Debtor finally asserts that, even if he did embezzle funds, only the joint venture between KAK-REI and creditor, rather than creditor alone, may bring a section 523(a)(4) claim. Debtor cites
 
 Coleman v. Choisnard (In re Choisnard),
 
 98 B.R. 37, 41 (Bankr.N.D.Okla.1989), which held that a creditor could not sue to recover money which he had deposited into a corporation’s general account when the corporation’s director and president allegedly embezzled the funds but did not owe a fiduciary duty to the creditor. Regardless of whether the holding in
 
 Choisnard
 
 is correct, it is inapplicable to the instant case because debtor took funds belonging to creditor from an account which creditor and debtor jointly held. Creditor therefore has a cause of action against debt- or to recover his own embezzled funds.
 

 3. Fraud as a fiduciary
 

 The Bankruptcy Court alternatively found under 11 U.S.C. § 523(a)(4) that debtor defrauded creditor while acting in a fiduciary capacity. The term “fiduciary” under section 523(a)(4) “applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity.”
 
 Riden v. Sigler (In re Sigler),
 
 196 B.R. 762, 764 (Bankr.W.D.Ky.1996) (quoting
 
 Carlisle Cashway, Inc. v. Johnson (In re Johnson),
 
 691 F.2d 249, 251 (6th Cir.1982)). Debtor argues that creditor failed to prove the existence of an express trust under state law, and that the District Court and Bankruptcy Court improperly relied upon
 
 In re Denton Coal Co.,
 
 20 B.R. 281, 283 (Bankr.W.D.Ky.1982), which held that Kentucky law imposes a constructive trust upon a party who purchases land for his individual account partially through funds provided by another party. We do not need to address whether
 
 *1174
 
 creditor proved the existence of an express trust, however, because the proper findings by the lower courts that debtor incurred a nondischargeable debt through both false pretenses and embezzlement already provide independent reasons to affirm.
 

 III. Conclusion
 

 Accordingly, we AFFIRM the order of the District Court.
 

 [1]
 

 . In the instant case, neither the trustee's motion nor the order granting the motion reveal precisely why the extension of time was necessary. The parties, however, have not contested whether the trustee demonstrated sufficient cause for an extension of time. We therefore do not address the issue.
 
 See, e.g., Noble v. Chrysler Motors Corp., Jeep Div.,
 
 32 F.3d 997, 1002 (6th Cir.1994) (refusing to consider argument not presented to district court);
 
 Fleischhauer v. Feltner,
 
 879 F.2d 1290, 1297 n. 4 (6th Cir.1989) (declining to decide issue not raised by the appellant),
 
 cert. denied,
 
 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990); 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990).
 

 [2]
 

 . In
 
 Herring,
 
 the bankruptcy court issued the order granting an extension of time over a month before the deadline for filing nondisehargeability complaints had elapsed.
 
 See Herring,
 
 116 B.R. at 314. In this case, it is unclear how creditor could have relied reasonably upon the order granting the trustee's motion because the Bankruptcy Court did not issue the order until
 
 after
 
 the deadline for filing nondisehargeability complaints had elapsed. We are not holding, however, that equitable concerns dictate that creditor be allowed to pursue his complaint because he relied reasonably upon an order of the Bankruptcy Court which actually was incorrect. Rather, we are holding that, as a matter of statutory construction, the trustee may legitimately secure on behalf of creditors an extension of time in which to file nondisehargeability complaints.
 

 [3]
 

 . Some bankruptcy courts, however, have held that the phrase "obtained by” in section 523(a)(2)(A) refers only to the particular means of false pretenses by which the creditor has lost assets, and that a debtor does not have to benefit personally from the creditor's loss.
 
 See, e.g., Sears, Roebuck and Co. v. Naimo (In re Naimo),
 
 175 B.R. 878, 880-81 (Bankr.E.D.Pa.1994);
 
 see also Jacobs v. Mones (In re Mones),
 
 169 B.R. 246, 250-54 (Bankr.D.D.C.1994) (not deciding issue but nonetheless arguing that debt is nondis-chargeable under section 523(a)(2)(A) even if debtor never received any benefit from creditor's loss through fraud).