**In re Renata Witt DRYJA, Debtor.**

**Aristocrat Lakewood Nursing Home, Plaintiff,**

v.

**Renata Witt Dryja, Defendant.**

**Bankruptcy No. 00–11911.
Adversary No. 00–1372.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 26, 2001.

Timothy N. Toma, Euclid, OH, for Plaintiff.

Thomas C. Pavlik, Cleveland, OH, for Defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The matter before the Court is the dischargeability of a judgment obtained by the Plaintiff, Aristocrat Lakewood Nursing Home ("Aristocrat"), against the Debtor–Defendant Renata Witt Dryja ("Debtor"). The Court acquires core matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and (b), 28 U.S.C. § 1334, and General Order Number 84 of this District. Following a duly noticed trial proceeding, the following findings and conclusions are made:

Matilda Hahn ("Hahn") was an elderly and infirm resident of Aristocrat, and the aunt of the Debtor. Due to an arrearage in Hahn's nursing home account, Aristo-

**632**

crat obtained a judgment in the amount of $7,826.39 against Hahn on July 25, 1996. In the weeks immediately preceding the Plaintiff's trial against Hahn, the Debtor, on three separate occasions, prepared checks that were signed by Hahn and drawn on Hahn's account, payable to the Debtor. Those checks were as follows: June 5, 1996 ($2,000); June 7, 1996 ($1,750); and July 9, 1996 ($2,545). (Plaintiff's Exh. 7–9)

As a result of those transfers, the balance in Hahn's checking account decreased from $6,524.14 to $379.10. (Plaintiff's Exh. 11.) On March 23, 1998, Aristocrat filed a complaint in state court against Hahn and the Debtor, alleging that the transfers were fraudulent conveyances. (Plaintiff's Exh. 1.) On November 26, 1998, the state court entered a stipulated judgment in favor of Aristocrat and against the Debtor in the amount of $6,812.14. (Plaintiff's Exh. 2.) The stipulated judgment included no findings of fact, only a judgment and a schedule of payment. *Id.*

On March 17, 2000, the Debtor filed her chapter 7 petition. Aristocrat now seeks to have the Court declare the subject judgment debt nondischargeable under § 523(a)(4)[1] or (6) of the Bankruptcy Code.[2]

■ Section 523(a) states, in pertinent part:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(4) & (6). It is Aristocrat's burden as the complainant to show

by a preponderance of the evidence that a dischargeability exception is warranted. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The Sixth Circuit construed "embezzlement" under subsection § 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1172–73 (6th Cir.1996). A creditor proves embezzlement by showing that: (1) he entrusted his property to the debtor; (2) the debtor appropriated the property for a use other than that for which it was entrusted; and (3) the circumstances indicate fraud. *Brady, supra,* at 1172–1173; *Ball v. McDowell (In re McDowell),* 162 B.R. 136, 140 (Bankr.N.D.Ohio 1993). As this Court has previously opined, embezzlement differs from larceny in that an embezzler's initial acquisition of the property is lawful. *Consumer United Ins. Co. v. Bustamante (In re Bustamante),* 239 B.R. 770, 777 (Bankr. N.D.Ohio 1999).

■ Aristocrat has not established the requisite elements of embezzlement under § 523(a)(4). The record shows that the Debtor prepared checks for Hahn's signature, and that the Debtor was the niece and payee of those checks. (Debtor, Cross–Exam.) The Debtor then negotiated the checks. *Id.* Aristocrat has established no undue influence or other untoward conduct that was committed by the Debtor towards Hahn. Without more, it is conceivable that Hahn actually intended to transfer the money to the Debtor. There is no indication of any misappropriation of the money by the Debtor. Moreover, the *Brady* elements set forth above indicate that a creditor may successfully show that a debt is nondischargeable due to embezzlement only where it is the property of

**1.** Aristocrat prosecutes this action under § 523(a)(4) with regard to only the embezzlement aspect of § 523(a)(4).

**2.** Aristocrat's Adversary Complaint also alleged nondischargeability under § 523(a)(2); however, it has chosen not to prosecute that count of the complaint.

the creditor that is misappropriated. *Brady, supra,* at 1172–73. *See also Werner v. Hofmann,* 5 F.3d 1170 (8th Cir.1993). Whether the property was misappropriated or not, it has not been shown that the property at issue belongs to Aristocrat, or that it possesses a specific lien interest in Hahn's bank account. Aristocrat cited no authority for the proposition a debt may be declared nondischargeable under § 523(a)(4) where the creditor was an unaffected third party to an alleged embezzlement. Nor has it been shown that the subject bank account balance contained all of Hahn's assets.

Aristocrat argues that the Debtor's preparation of the checks indicates fraudulent or otherwise improper conduct. That contention is without merit. Applicable law is unambiguous regarding the effects of a duly drafted and negotiated check. The issuance of a check obligates only two parties: the drawee bank, and the drawer, who is the signatory. *See* U.C.C. §§ 3–414(b)(i), 3–401(a) (1995), 3–103(3). A check is not issued until it is delivered by the drawer to another party. *See* U.C.C. § 3–105(a). Therefore, under the present facts, the two acts that created a legally binding instrument were Hahn's signature on the checks, and her delivery of the checks to the Debtor. Issuance of a check effects an unconditional promise to pay the payee. U.C.C. § 3–106(a). The Debtor's preparation of the checks had no effect on the validity of the checks, and, without more, do not indicate fraud.

Aristocrat further argues that, because it obtained a judgment against Hahn, it held an interest in the assets in her bank account. Under Ohio law, however, a judgment does not constitute a valid lien on property unless a certificate of judgment is entered of record in the county in which the property is located. O.R.C. § 2329.02. *See also Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.,* 62 Ohio App.3d 657, 577 N.E.2d 383 (Ohio App. 1989). Further, a judgment lien may be effected against personal property by the creditor's

seizing the property in execution. O.R.C. § 2329.03. Aristocrat has not shown that it has filed a certificate of judgment, nor that it effected a lien predicated upon the levy of an execution. Therefore, the record does not establish that Aristocrat held any interest in Hahn's bank account.

Aristocrat also alleges nondischargeability under § 523(a)(6). In *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court held that the scope of the "willful and malicious injury" is limited to acts done with the intent to bring about their result, thereby rejecting the argument that the term includes all intentional acts with harmful results. Following *Geiger,* the Sixth Circuit specified a standard for § 523(a)(6): "unless 'the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *In re Markowitz,* 190 F.3d 455, 464 (6th Cir. 1999) (quoting Restatement (Second) of Torts § 8A, at 15 (1964)). Applying *Markowitz,* a creditor must establish that the debtor caused an injury to another entity, or to the property of another entity, and that the debtor knew that his act would cause, or was substantially certain to cause, that injury.

In this case, Aristocrat has not met its burden with regard to the elements of § 523(a)(6). First, Aristocrat has not established that the Debtor caused an injury to it. Had Hahn not transferred the money to the Debtor, it is not clear that she would have paid Aristocrat, rather than satisfying other obligations. Similarly, Aristocrat has not demonstrated that the subject transfers depleted Hahn's assets, only that they depleted one checking account. Second, even if, *arguendo,* Aristocrat suffered an injury, it has not established that the Debtor knew that her acceptance of the money would—or was substantially certain to—adversely affect Aristocrat.

Aristocrat argues that the Debtor is collaterally estopped from disputing the fraudulent nature of the transfers, by virtue of the 1998 stipulated judgment. It asserts that a bankruptcy court must look to state law to determine applicability of collateral estoppel, and that Ohio law allows a consent judgment to be given the same binding effect as a judgment on the merits. (Plaintiff's Trial Brief, p. 2) The Debtor vigorously opposes application of collateral estoppel. She contends that collateral estoppel is improper where the initial claims were not actually litigated. (Defendant's Trial Brief, p. 2) For the reasons that follow, the Court does not need to address the issue of the applicability of collateral estoppel to a stipulated judgment.

■ Aristocrat is correct that a federal trial court must look to state law to determine any preclusive effect of a state court default judgment or consent judgment. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir.1997); *North American Science Ass'n v. Clark (In re Clark)*, 222 B.R. 114 (Bankr. N.D.Ohio). However, "... [w]here the language of Congress indicates a policy referring to broader construction of the statute than the state decisions were giving, federal courts cannot be concluded by them." *Board of Trade of Chicago v. Johnson*, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924); *accord, Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Congress has clearly expressed the requirements for determining whether or not a given debt is dischargeable by enacting a statutory scheme set forth under § 523(a) of the Bankruptcy Code. Those requirements cannot be abridged in the absence of specific findings and/or legal conclusions.

■ Under Ohio law concerning fraudulent transfers, a creditor must establish that a transferee shared the transferor's fraudulent intent, if the transferee gave valuable consideration. *Lessee of Burgett v. Burgett*, 1 Ohio 469 (1824); *The*

*Stahl Associates v. Brumbaugh*, 1982 WL 6265 (Ohio Ct.App.1982); *Fulton v. Stump*, 50 Ohio Ct.App. 295, 198 N.E. 47 (Ohio Ct.App.1934); *Blackford v. Gaynor*, 50 Ohio Ct.App. 494, 198 N.E. 736 (Ohio Ct. App.1934). On the other hand, if the transferee did not give valuable consideration, the transferee's intent is immaterial, and the transfer is avoidable. *City Trust & Sav. Bank v. Weaver*, 68 Ohio Ct.App. 323, 40 N.E.2d 953 (Ohio Ct.App.1941). Thus, a creditor seeking to avoid an allegedly fraudulent conveyance may seek to prove either that the transfer was not for valuable consideration, or that the transferee knew of the transferor's fraudulent intent.

■ Aristocrat's 1998 state court action against Hahn and the Debtor alleges that "Hahn did not receive nor did [the Debtor] give reasonably equivalent value in exchange for the transfers." (Plaintiff's Exh. 1–2, at ¶ 3.) Nowhere does that complaint allege that the Debtor knew of a fraudulent intent on the part of Hahn, or that the Debtor harbored such an intent. Similarly, the 1998 stipulated judgment from the state court contains no findings of fact whatsoever. (Plaintiff's Exh. 2.) The Debtor's Answer to the Complaint (Para. 8) is clear to deny any alleged fraudulent conduct. Thus, even if collateral estoppel could apply to a stipulated judgment, the judgment in the underlying state court action does not set forth sufficient factual findings or legal conclusions to allow this Court to preclude the relitigation of any issue pertinent to a dischargeability action. Even if the Court were willing to look past the absence of findings in the judgment, and accept all facts alleged in the complaint as true, Aristocrat still would not have established that the Debtor acted with any fraudulent or wrongful intent. Therefore, the question of the applicability of collateral estoppel to these facts is not well found.

Accordingly, judgment is hereby rendered in favor of the Defendant, and the

subject debt is hereby found dischargeable. Each party is to bear its respective costs.

**IT IS SO ORDERED.**