**S & M BRANDS, INC. and International Tobacco Partners, Ltd., Plaintiffs,**

v.

**Paul G. SUMMERS, In his official capacity as Attorney General of the State of Tennessee, Defendant.**

No. 3:05CV0171.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 16, 2006.

David F. Dobbins, Patterson, Belknap, Webb & Tyler, New York, NY, Jennifer S.

Ghanem, Lassiter, Tidwell & Hildebrand, Nashville, TN, Jerry W. Laughlin, Rogers, Laughlin, Nunnally & Hood, Greenville, Clark Hickman Tidwell, Lassiter, Tidwell & Hildebrand, Nashville, Walter M. Luers, Patterson, Belknap, Webb & Tyler, New York, NY, for S & M Brands Inc, International Tobacco Partners Ltd, Plaintiffs.

John H. Sinclair, Jr., Tennessee Attorney General's Office, Daniel Champney, Tennessee Attorney General's Office, Nashville, TN, for Paul G. Summers, Defendant.

### MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR RECONSIDERATION

WISEMAN, Senior District Judge.

Before the Court is Defendant Paul G. Summers' Motion For Reconsideration (Doc. No. 131), filed in conjunction with a supporting Memorandum of Law (Doc. No. 132) and numerous exhibits and affidavits. The sole subject of the present motion is the Court's determination on summary judgment that Plaintiff International Tobacco Partners, Ltd. ("ITP") has standing to bring the only claim in this case that has not already been dismissed for failure to state a claim or on summary judgment. Defendant argues that ITP does not have standing to bring that claim because it is not a "tobacco product manufacturer" as that term is defined by Tenn.Code Ann. § 47–31–102(9). ITP has filed its response in opposition to Defendant's motion (Doc. No. 140), along with supporting declarations and exhibits, and Defendant, with the Court's permission, filed a reply brief (Doc. No. 145). The Court denied ITP's request to file a sur-reply and instead ordered both parties to file supplemental briefs addressing issues that are critical to determination of the issue at hand but which were not adequately discussed in the parties' original filings (see Doc. No. 147).

The parties have filed their supplemental briefs ( Doc. Nos. 150 and 152).

Having reviewed all the filings and the record as a whole, the Court finds that ITP has standing to bring the claim at issue, and Defendant's motion for reconsideration will therefore be denied.

## I. BACKGROUND

The Court's prior opinions (Doc. Nos. 105 and 121) together provide a comprehensive account of the factual and procedural background of this case, which will not be reiterated here. The Court will also presume familiarity with the abbreviations and acronyms used in the earlier memoranda. Only the procedural background relevant to the present motion will be set forth below.

Defendant first raised the issue of ITP's standing in its Rule 12(b)(6) motion to dismiss for failure to state a claim (Doc. No. 35). At that point, Defendant did not seek to introduce any facts outside the pleadings in support of his standing argument, and the Court, finding that ITP's allegations in the Complaint regarding standing were sufficient to survive the Rule 12(b)(6) motion, declined to dismiss ITP on jurisdictional grounds. The Court nonetheless granted Defendant's Rule 12(b)(6) motion to dismiss Plaintiffs' antitrust, due process, equal protection, and First Amendment claims for failure to state a claim upon which relief could be granted. (See Oct. 6, 2005 Order and Memorandum Opinion, Doc. Nos. 106 and 105.)

In response to Defendant's subsequent motion for summary judgment, the Court denied summary judgment against ITP on the grounds of standing based upon the facts before it at that time. The Court then addressed the merits of the remaining claims and held that (1) Defendant was

entitled to summary judgment in its favor as to Plaintiffs' state-law claims on the basis of sovereign immunity; (2) Defendant did not apply retroactively the Allocable Share Release amendment, 2004 Pub. Acts. ch. 535 § 1, *codified at* Tenn.Code Ann. § 47–31–103(a)(2)(B)(ii) (the "ASR amendment"), as to 2004 cigarette sales by either plaintiff; but (3) Defendant had violated ITP's constitutional rights when it retroactively applied the ASR amendment to ITP's request for a release of excess funds escrowed for 2003 cigarette sales in Tennessee. (*See* Nov. 28, 2005 Order and Memorandum Opinion, Doc. Nos. 122 and 121.) Defendant moves the Court to reconsider this last holding.

Although ITP's standing was technically a threshold question applicable to the other claims brought by ITP, the Court, having ruled adversely to ITP on all claims except that related to the 2003 release, will not now revisit the issue of whether ITP had standing to bring those claims in the first place. Thus, the sole issue before the Court now is whether ITP has standing to challenge Defendant's refusal to authorize the release of excess funds escrowed for the year 2003. In other words, to be clear, the Court is *not* addressing the question of whether ITP had standing to challenge the Tennessee Tobacco Statutes and the MSA generally on antitrust or constitutional grounds.

As indicated above, the Court originally denied summary judgment to Defendant on the issue of ITP's standing based upon evidence presented by ITP. Specifically, as set forth in the Court's Memorandum Opinion addressing ITP's standing (Doc. No. 121), ITP had produced a Declaration by Jeffrey Avo Uvezian in which Mr. Uvezian alleged that he is President of ITP and familiar with all of ITP's operations; that ITP is in the business of importing cigarettes from foreign manufacturers and attempting to re-sell them to wholesalers in the United States, including wholesalers in Tennessee; and that ITP was put out of business as a result of the passage of the ASR amendment. (1/14/05 Decl. of Jeffrey Avo Uvezian ("Uvezian Decl.") ¶¶ 2, 3, 7.) Mr. Uvezian further asserted that ITP "deposited into escrow the full escrow amount, approximately $3.90 per carton, required by Tennessee law" for cigarettes sold in Tennessee in 2003 and that, because the original ASR provision, Tenn. Code Ann. § 47–31–103(a)(2)(B)(ii) (1999), was still in effect at the time, ITP "expected to receive a refund of $30,802.80." (Uvezian Decl. ¶ 13.) Defendant, on the other hand, had presented no admissible evidence to challenge Mr. Uvezian's assertions or otherwise in support of Defendant's challenge to ITP's standing.

After the Court's Order was issued, however, additional facts came to light regarding ITP's status. In particular, it has become clear that ITP imports cigarettes manufactured in Armenia by Grand Tobacco, Ltd. ("Grand Tobacco"); that Grand Tobacco manufactures those cigarettes with the intent of selling them in the United States through an importer (*i.e.*, ITP); and that Grand Tobacco rather than ITP is a "tobacco product manufacturer" as that term is defined by Tennessee statute. *See* Tenn.Code Ann. § 47–31–102(9)(A)(i). As a tobacco product manufacturer, Grand Tobacco is subject to the restraints imposed by the Tennessee Tobacco Manufacturers' Escrow Fund Act of 1999, Tenn. Code Ann. §§ 47–31–101 to –103 ("Escrow Act"), and the tax laws passed to aid in the enforcement of the Escrow Act, Tenn.Code Ann. §§ 67–4–2601 to –2606 (collectively with the Escrow Act, the "Tobacco Statutes"). In compliance with its obligations under the Tobacco Statutes, Grand Tobacco has been listed on the Tennessee directory of tobacco product manufacturers at all times relevant to this litigation. Grand

Tobacco has established a qualified escrow fund account pursuant to Escrow Act. Deposits have been made into that account in Grand Tobacco's name, and Grand Tobacco has filed an escrow compliance certificate for the relevant year pursuant to Tenn. Code Ann. § 47–31–103(a)(3). To the extent ITP has deposited funds into escrow relating to cigarette sales in the state of Tennessee, as ITP alleges, it has apparently always done so in the name of and on behalf of Grand Tobacco.

Moreover, in the past, Grand Tobacco or its representatives have contacted the State of Tennessee directly to seek releases from Grand Tobacco's escrow account under Tenn.Code Ann. § 47–31–103(a)(2)(B)(ii) (1999), including for the year 2003. Although ITP maintains that it has received the funds released from Grand Tobacco's escrow account for the years in which a release was authorized, it is nonetheless clear that the State of Tennessee issued orders that the funds be released to Grand Tobacco "or its designee," and that, at least as far as the State was concerned, ITP was simply that designee.

ITP, however, has now presented a declaration from Mikael Vardanyan, Vice President of Grand Tobacco, in which Mr. Vardanyan states that (1) Grand Tobacco maintains an escrow account at North Fork Bank, with subaccounts for each separate state in which ITP sells cigarettes, including Tennessee; (2) since the establishment of the account in 1999, ITP has placed the requisite funds into that account on behalf of Grand Tobacco; and (3) any Allocable Share Release funds from that account have always been "sent by escrow agent directly to ITP and ... retained by ITP." (Doc. No.140, Ex. 5.) In a "Supplemental Declaration" produced by ITP, Mr. Vardanyan attests that it has "always been understood and agreed be-tween ... Grand Tobacco and ... ITP that ITP would have the right to any funds released out of the Tennessee Subaccount." (Doc. No. 154.) In case there is any doubt as to that point, Mr. Vardanyan attached to his Supplemental Declaration a written Irrevocable Assignment, dated February 8, 2006, in which Grand Tobacco "irrevocably relinquishes and assigns and transfers to International Tobacco Partners, Ltd ... all of its right to the release of funds, pursuant to Tenn.Code Ann. § 47–31–103(a)(2)(B)(ii), in a certain escrow subaccount presently held and to all such funds thereafter paid into the aforesaid account ... in the name of Grand Tobacco established to receive and hold all escrow payments for cigarettes manufactured by Grand Tobacco and imported into and sold in Tennessee." (Doc. No. 154.)

The parties do not dispute the facts that ITP itself has never established a qualified escrow account, asked for a release of funds from any such escrow account, sought certification to be included on the Tennessee directory of tobacco product manufacturers or otherwise complied with the Tobacco Statutes. Grand Tobacco itself never informed the State of Tennessee that it had assigned to ITP its rights to receive funds released from the escrow account except through the declarations of Mikael Vardanyan discussed above.

## II. DISCUSSION

The issue presented is whether ITP has standing to bring its claim for a release of funds from Grand Tobacco's escrow account for the year 2003. To reach an answer to that question, the Court asked the parties to file supplemental briefs addressing the questions of (1) whether a valid assignment exists between ITP and Grand Tobacco pursuant to which ITP has a legal right to claim proceeds disbursed from Grand Tobacco's escrow fund and if

so, what is the scope thereof; (2) assuming a valid assignment exists, does it confer upon ITP Article III standing to pursue Grand Tobacco's constitutional rights that the Court has already determined were violated by Defendant's retroactive application of the 2004 ASR amendment to a request for an escrow release for 2003; and (3) again assuming the existence of a valid assignment, does ITP have prudential standing.

## A. Whether a Valid Assignment Exists and the Effect Thereof

■ An "assignment" is a transfer of property or some other right from one person (the "assignor") to another (the "assignee"), which confers a complete and present right in the subject matter to the assignee. An assignment is a contract between the assignor and the assignee and is interpreted or construed according to rules of contract construction. *See In re Kingsport Ventures, L.P.*, 251 B.R. 841, 847 (Bankr.E.D.Tenn.2000) (applying Tennessee law to the construction of an assignment contract). Ordinarily, the term "assignment" is limited in its application to a transfer of intangible rights, including contractual rights, choses in action, and rights in or connected with property, as distinguished from a transfer of the property itself. *See* 6 Am.Jur.2d *Assignments* § 1.

■ "In the absence of statute, an obligee has a right to assign a chose in action and the general rule is that the unqualified assignment of such right of action vests in the assignee the title thereto to the same extent as the assignor had it at the date of the assignment." *Kivett v. Mayes*, 49 Tenn.App. 272, 354 S.W.2d 492, 494 (1961); *see also Can Do, Inc. v. Manier, Herod,*

*Hollabaugh and Smith,* 922 S.W.2d 865, 867 (Tenn.1996) (causes of action are as a rule assignable "except those involving matters purely personal in nature" and "tort actions involving personal injuries and wrongs done to the person, reputation, or feelings of the injured party").

■ As a factual matter, there can be no dispute that Grand Tobacco intended to assign to ITP all rights to any funds released from escrow relating to cigarette sales in Tennessee for the year 2003, including the right to bring a claim against the Defendant for wrongfully failing to release such funds. The fact that such agreement was only reduced to writing recently does not affect its validity prior to execution of the writing, since oral or mental assignments of a debt or chose in action are valid in Tennessee. *Denley Rentals, LLC v. Etheridge,* No. W2000–00189–COA–R3–CV, 2001 WL 792646, at *3 (Tenn.Ct.App. July 11, 2001) (citing *Jackson Bros. v. Harpeth Nat'l Bank,* 12 Tenn. App. 464, 1930 WL 1721, at *4 (Tenn.Ct. App.1930)). The assignment clearly is valid and enforceable as between Grand Tobacco and ITP.[1] The question is whether the assignment is valid as to third parties, such that ITP has the power to step into Grand Tobacco's shoes for the purpose of enforcing those rights against the Defendant. Defendant basically argues that the assignment is invalid because (1) he did not have notice of it; (2) the purported assignment is forbidden by statute or is otherwise inoperative on the grounds of public policy; or (3) the assignment is precluded by contract.

With respect to Defendant's contention that failure to give notice of the assign-

---

1. The fact that demand for a release of funds and other correspondence concerning the release but predating the lawsuit was written by an attorney on behalf of Grand Tobacco does not necessarily support an inference that an assignment as between ITP and Grand Tobacco had not already occurred.

ment renders it void, it is noteworthy that Defendant does not argue that he was actually prejudiced by this lack of notice. Instead, he argues that under Tennessee law, the assignment of a right to receive payment from a third party is not effective unless "notice of the assignment is given to the party obligated to pay." (Doc. No. 150, at 4 (quoting *In re Webb,* 187 B.R. 221, 225 (Bankr.E.D.Tenn.1995).))

▇ That statement appears to be correct in cases involving a "contest between an assignee who had failed to give notice to the debtor and third parties claiming to have derived rights from the debtor prior to notice." *Kivett v. Mayes,* 49 Tenn.App. 272, 354 S.W.2d 492, 493 (1961). Otherwise, notice is not required. *See Kivett,* 354 S.W.2d at 494. In *Kivett,* the trial court had dismissed a claim brought by a widow who was the assignee of her deceased husband's chose in action, on the basis that the obligor had never received notice of the assignment. The Tennessee Court of Appeals reversed, holding specifically that failure to notify the obligor of the assignment prior to filing suit is not required "unless the rights of the obligor have been prejudiced or the rights of third parties have intervened." *Id.; see also Ford v. Robertson,* 739 S.W.2d 3, 5 (Tenn.Ct.App.1987) (citing *Kivett* in support of the proposition that a chose in action is assignable and such assignment vests as of the date of the assignment, without regard to the question of notice). Here, Defendant does not indicate that he has been prejudiced by the failure to give notice, nor have the rights of third parties intervened. Accordingly, the failure to give notice in this case does not affect the validity of the assignment.

▇ Defendant also argues that the assignment is invalid because it is prohibited by statute. The statutory provisions cited in support of this argument specify that the excess funds paid into escrow "shall be released from escrow and shall revert back *to such tobacco product manufacturer.*" Tenn.Code Ann. § 47–31–103(a)(2)(B)(ii) (1999) (emphasis added). As discussed above, Grand Tobacco is a tobacco product manufacturer, and the escrow funds in question are held in an account in Grand Tobacco's name and were deposited there in the first place by or on behalf of Grand Tobacco. Defendant does not, however, point to any express statutory prohibition against the tobacco product manufacturer's assigning the right to such funds upon their release to a third party, and the Court declines to read the statutory scheme as implying such a prohibition. The Court therefore finds that assignment is not prohibited by statute.

Defendant further contends that the language of the Escrow Act regarding the release of funds "indicate[s] a clear legislative intent to limit the right to access or control escrowed funds to State and, under limited circumstances, to the tobacco product manufacturers. Moreover, two private parties cannot, through a side agreement between themselves, amend a civil law enforcement scheme mandated by state law or encroach upon the State of Tennessee's sovereign authority to follow and enforce specific provisions of Tennessee statutes." (Doc. No. 150, at 2.) Defendant does not cite to any case law or statute in support of this statement. To the extent Defendant is attempting to argue that the assignment is void or invalid as a matter of public policy, such argument is insufficiently supported. As indicated above, the issue is *not* whether Grand Tobacco can assign its *obligations* under the Tobacco Statutes. Moreover, the Court is not revisiting the issue of whether ITP has standing to bring antitrust and constitutional challenges against the Tobacco Statutes and the MSA generally. The sole

matter of concern is whether Grand Tobacco has effectively assigned to ITP whatever rights Grand Tobacco has to a release of excess funds escrowed for 2003 cigarette sales. Defendant simply has not articulated a legitimate public policy concern that would bar such assignment.

Finally, Defendant argues that the assignment is barred by contract. In support of this argument, Defendant points to the Escrow Agreement entered into by Grand Tobacco and North Fork Bank on June 12, 2003, which, Defendant argues, prohibits Grand Tobacco from assigning its rights to the funds. The Escrow Agreement provisions quoted in support of this argument state:

> All funds received by the Escrow Agent pursuant to the terms of this Escrow Agreement shall be held, invested and disbursed in accordance with the terms and conditions of this Escrow Agreement and the NPM statutes.
>
> . . . .
>
> No persons other than the Beneficiary States that have enacted NPM Statutes and Releasing Parties are intended beneficiaries of this Escrow Agreement, and only the Beneficiary States, the Releasing Parties, and the Company [Grand Tobacco] are entitled to enforce the provisions of this Escrow Agreement.

(Doc. No. 150, at 3 (quoting Ex. Q, at 4, 14).)

Regardless of whether the Escrow Agreement might be construed to prohibit assignment, the language of the Escrow Agreement is not dispositive here, because this is not an action to enforce the Escrow Agreement, nor has any party alleged that the Escrow Agreement has been breached. ITP's claim for damages is based upon the Defendant's retroactive application of the ASR amendment to a claim for a release of excess funds escrowed for cigarette sales made in 2003. The assignment in question is therefore not prohibited by contract.

Because Defendant has not raised any legitimate objections to the assignment at issue, the Court finds that Grand Tobacco has validly assigned to ITP its right to pursue a cause of action for the release of excess funds escrowed for 2003.

## B. Whether ITP Has Standing To Bring the Claim For the Release

Article III standing is a jurisdictional requirement. "In order for a federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue. Standing has both constitutional and prudential dimensions. The constitutional requirements for standing emanate from Art. III, § 2, of the U.S. Constitution, which grants federal courts jurisdiction over 'cases' and 'controversies.'" *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir.1996). To establish Article III standing, a plaintiff must, at a minimum, establish the following elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a *legally protected interest* which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a "favorable decision."

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Article III standing is a jurisdictional requirement that cannot be waived, and as such may be

brought up at any time in the proceeding. Fed.R.Civ.P. 12(h)(3). The appropriate inquiry has been framed as follows: "[T]he standing question is whether a plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *T.H.E. Ins. Co. v. Naghtin,* 916 F.2d 1082, 1084 (6th Cir. 1990) (internal quotation marks and citations omitted).

■ In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions. First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *See id.* These additional restrictions enforce the principle that, "as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 494 (6th Cir.1999) (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir.1991)).

In the case at bar, given the finding that a valid assignment occurred, it is clear that ITP has Article III standing to bring the claim at issue. "An assignment 'passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment.'" *Bishof v. Yarbrough Const., Co.,* C.A. No. 02A01–9411–CH–00256, 1996 WL 490629, at *7 (Tenn.Ct.App. Aug.29, 1996) (quoting 6A C.J.S. Assignments § 73 (1975)). "The general rule is that an assignee in whom legal title is vested must bring an action as he is the real party in interest. Typically, an assignor cannot bring an action after he has fully and completely transferred to another title to a cause of action." *Id.* (citations omitted). Moreover, Rule 17(a) of the Federal Rules of Civil Procedure mandates that "every action ... be prosecuted in the name of the real party in interest."

■ In other words, ITP is, by virtue of the assignment, the *only* party with standing to challenge the Defendant's retroactive application of the ASR amendment to the request for a release of funds from Grand Tobacco's escrow account. Thus, with respect to prudential standing considerations, ITP is not asserting any rights on behalf of Grand Tobacco, a third party, *cf. Warth,* 422 U.S. at 499, 95 S.Ct. 2197, nor is it simply asserting a "generalized grievance." *See Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. 752. Finally, to the extent this action may be construed as a statutory case, ITP cannot, under the circumstances, be said to fall outside the zone of interests regulated by the statute in question, ITP therefore has prudential standing as well as Article III standing.

## III. CONCLUSION

For the reasons set forth above, the Court finds that ITP has standing to challenge Defendant's retroactive application of the 2004 ASR amendment. Defendant's

motion to reconsider will therefore be denied.

An appropriate Order will enter.