RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18b0009p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

In re:   EARL BENARD BLASINGAME; MARGARET GOOCH BLASINGAME,

*Debtors*.

---

CHURCH JOINT VENTURE, L.P.,

*Plaintiff-Appellant*,

*v.*

EARL BENARD BLASINGAME; MARGARET GOOCH BLASINGAME; THE BLASINGAME FAMILY BUSINESS INVESTMENT TRUST,

*Defendants-Appellees*.

No. 17-8029

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee at Memphis.
No. 08-28289—Jennie D. Latta, Judge.

Argued:  May 8, 2018

Decided and Filed:  June 6, 2018

Before:  HUMPHREY, OPPERMAN, and WISE, Bankruptcy Appellate Panel Judges.

---

## COUNSEL

**ARGUED:**  Bruce W. Akerly, MALONE AKERLY MARTIN PLLC, Dallas, Texas, for Appellant.  Michael P. Coury, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellees.  **ON BRIEF:**  Bruce W. Akerly, MALONE AKERLY MARTIN PLLC, Dallas, Texas, for Appellant.  Michael P. Coury, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellees.

---

**OPINION**

---

TRACEY N. WISE, Bankruptcy Appellate Panel Judge. Creditor/Appellant Church Joint Venture, L.P. ("Creditor") filed a complaint in which it asserted derivative standing to pursue claims on behalf of the Chapter 7 Trustee, Edward L. Montedonico, against Earl Benard Blasingame and Margaret Gooch Blasingame ("Debtors") and The Blasingame Family Business Investment Trust ("BIT") (together with Debtors, the "Defendants"). Defendants moved to dismiss the complaint for lack of subject matter jurisdiction asserting Creditor lacked standing. The bankruptcy court granted Defendants' motion, finding that, because Trustee previously had sold the claims to Creditor, Creditor could not thereafter pursue the claims derivatively on Trustee's behalf. Creditor appeals from the order dismissing the complaint. For the reasons stated, we affirm.

**ISSUES ON APPEAL**

Creditor identifies one issue on appeal: whether the bankruptcy court erred in dismissing Creditor's complaint for lack of subject matter jurisdiction premised on lack of standing. The briefing on this appeal, however, revealed that a second issue also must be decided: the appropriate standard of review to apply to a bankruptcy court's interpretation of its own order approving a sale under § 363 of the Bankruptcy Code.[1]

**JURISDICTION**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Tennessee has authorized appeals to the Panel, and no party timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6) and (c)(1). A bankruptcy court's final order may be appealed as of right. 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp.*

---

[1]Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

*v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494 (1989) (citations omitted). An order granting a motion to dismiss for lack of standing is a final order. *Schwab v. Oscar* (*In re SII Liquidation Co.*), 517 B.R. 72, 76 (B.A.P. 6th Cir. 2014) (citation omitted).

**FACTS**

Debtors filed their bankruptcy petition in 2008. In 2009, Trustee and Creditor together filed an adversary complaint (the "2009 Complaint") against Debtors and several others ("Non-Debtor Defendants"), including the BIT, generally seeking two types of relief: (1) a declaration that Debtors were not entitled to a discharge, and (2) to augment the bankruptcy estate by recovering assets from the Non-Debtor Defendants. [AP No. 09-00482 ("2009 Action"), ECF No. 1.] About two years later, Creditor and Trustee entered into an agreement whereby Creditor purchased the bankruptcy estate's claims and causes of action in the 2009 Complaint, save for Trustee's claims objecting to Debtors' discharge, in exchange for $100,000 and a 25% reduction to Creditor's proof of claim. Trustee moved the bankruptcy court in Debtors' main case to authorize the sale of a

> claim[] and cause of action … for declaratory judgment that each of the three (3) trust and five (5) corporate defendants [including the BIT] have been used for an improper purpose and are, in fact, the alter egos or reverse alter egos of the Debtor Defendants, are shams to thwart, deceive, hinder and delay their creditors and to conceal assets from the claims of their creditors and/or have been so misused and their assets so repeatedly commingled that the assets of each of them should be considered one and the same and made available to their creditors.

[Case No. 08-28289, ECF No. 331 ("Sale Motion") ¶ 5.b.] No party objected, and the bankruptcy court entered Trustee's tendered order approving the sale from Trustee to Creditor. [Case No. 08-28289, ECF No. 356 (the "Sale Order").] The Sale Order provided that, upon the aforementioned payment "as consideration for the transfer, conveyance and assignment of the claims and cause[s] of action of the Trustee which have been asserted in" the 2009 Action, then

> all claims and/or causes of action asserted by Trustee in the [2009 Action], except those relating to Debtors' discharge, shall be and are hereby transferred, conveyed, and assigned to [Creditor], including but not limited to the following:
>
> A.     Claims that [the BIT and other Non-Debtor Defendants] have all been used for an improper purpose and are, in fact, the alter egos or reverse alter egos of the Debtors, are shams to thwart, deceive, hinder and delay their creditors and

to conceal assets from the claims of their creditors and/or have been so used in their assets repeatedly co-mingled with the assets of each of them should be one of the same [sic] and made available to their creditors[.]

[*Id.*, ¶¶ 2, 4.]

The purchased causes of action and claims then were dismissed from the 2009 Action for lack of subject matter jurisdiction based on the premise that, following the Sale Order, Trustee no longer owned and, thus, lacked standing to assert them. [AP No. 09-00482, ECF No. 285.] The bankruptcy court explained:

> [T]he sale by the Trustee of the causes of action raised in the 2009 Complaint against the Non-Debtor Defendants, including the [BIT], left the bankruptcy court without jurisdiction over those causes of action because the outcome of those disputes could have no economic effect upon the bankruptcy estate. [] The court nevertheless did not dismiss the 2009 Complaint because [Creditor] was an original plaintiff in its own right. With respect to the Trustee's causes of actions that had been sold to [Creditor], the court reserved decision or recommendation because although federal bankruptcy jurisdiction was no longer present as the result of the sale, federal jurisdiction might be retained in the event that substantial prejudice would result from dismissal. The parties were directed to file briefs and/or affidavits concerning the issue of prejudice. They subsequently agreed that the Non-Discharge Causes of Action might be dismissed without prejudice for lack of subject matter jurisdiction, which resulted in the entry of the Consent Order of November 14, 2012, Adv. Proc. No. 09-00482, Dkt. No. 336.

*Church Joint Venture, L.P. ex rel. Montedonico v. Blasingame* (*In re Blasingame*), AP No. 17-00049, 2017 Bankr. LEXIS 2362, at *12-13 (Bankr. W.D. Tenn. Aug. 17, 2017) (the "Opinion").

Creditor, on its own behalf, then filed the dismissed claims in the United States District Court for the Western District of Tennessee, Case No. 12-02999 ("DC Case"). Among other things, Creditor alleged in the DC Case that the BIT was an alter ego and/or reverse alter ego and instrumentality of Debtors, such that its assets should be considered Debtors' assets, and that those assets should be made available to satisfy Debtors' creditors' claims. Creditor's complaint in the DC Case also referenced the turnover and sale of pertinent assets, including those held by the BIT. The district court dismissed the alter ego related claims against the BIT on the merits, finding that Tennessee law does not recognize reverse-veil-piercing outside the context of

parent-subsidiary corporate relationships. *Church Joint Venture, L.P. v. Blasingame*, Case No. 12-2999, 2016 U.S. Dist. LEXIS 189261, at *17-22 (W.D. Tenn. Jan. 13, 2016).[2]

Next, Creditor filed a new complaint—at issue here—against Defendants in the bankruptcy court, invoking derivative standing. [AP No. 17-00049, ECF No. 1 (the "2017 Complaint").] The 2017 Complaint sought a declaration that the BIT is a self-settled trust and, thus, that its assets are not excluded from property of Debtors' bankruptcy estate by § 541(c)(2). The 2017 Complaint also demanded a turnover of the property held by the BIT (or its value) to Trustee.

Defendants moved to dismiss the 2017 Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), made applicable by Federal Rule of Bankruptcy Procedure 7012(b). Defendants argued that, upon the sale of the claims in the 2009 Complaint to Creditor, Trustee no longer owned the claims and Creditor could not pursue them derivatively on Trustee's behalf. Creditor responded that the 2009 Complaint did not assert a claim based on the theory that the BIT is a self-settled trust, and therefore the specific request for declaratory relief in the 2017 Complaint was not pursued in the 2009 Action. Consequently, Creditor argued, Trustee did not sell Creditor any claim based on the theory that the BIT was self-settled, and Creditor could pursue that claim derivatively on Trustee's behalf. The bankruptcy court disagreed and granted Defendants' motion, explaining:

> Although the 2009 Complaint sought a declaration that the assets of the [BIT] are property of [Debtors'] bankruptcy estate, it did so on the basis of alter ego, piercing the corporate veil, or reverse piercing theories. The issue raised by the present motion is whether the request for a declaration that the assets of the [BIT] are assets of the bankruptcy estate includes every theory under which that might be true? The simple answer is yes, because assets of the [BIT] can only be recovered once. [Creditor] purchased the right to recover *on its own behalf* the assets of the [BIT]. The estate received compensation for the sale. The bankruptcy court dismissed the [BIT] from the 2009 Complaint because the estate had already received the value of any assets held by the [BIT] found to be assets of the bankruptcy estate. Having sold the right to recover the value of those assets, the bankruptcy estate cannot now attempt to recover the value of the same assets on another theory.

---

[2]The DC Case remains pending; thus, the order dismissing the aforementioned claims is not a "final order."

*Blasingame*, 2017 Bankr. LEXIS 2362, at *14 (emphasis in original).  Creditor filed a timely appeal.

## DISCUSSION

I.      **Standards of review.**

This appeal requires the review of two different rulings by the bankruptcy court underlying its dismissal of the adversary proceeding.  To rule on Defendants' motion to dismiss for lack of subject matter jurisdiction, the bankruptcy court first interpreted the Sale Order.  After construing the Sale Order, the bankruptcy court then concluded that Creditor lacked standing to pursue the claims asserted in the pertinent complaint, and granted Defendants' motion to dismiss.

A.      **A bankruptcy court's interpretation of its own order authorizing a sale under Section 363 is reviewed for an abuse of discretion.**

The parties disagree on the standard of review to be applied to the bankruptcy court's interpretation of the Sale Order.  In its briefs, Creditor argues that this scenario presents a question of law reviewed de novo for two different reasons.  First, Creditor cites *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008), for the proposition that the interpretation of a court's order is a question of law.  In *Winget*, the Sixth Circuit affirmed a district court's dismissal of a complaint based on a failure to state a claim.  The case followed a § 363 sale of a debtor's assets in bankruptcy court.  The district court found that res judicata barred the plaintiff/appellant's claims.  On appeal, the circuit court rejected the appellant's argument that the district court erred in not drawing *all* inferences in the appellant's favor, including with respect to how to interpret the bankruptcy court's sale order, as courts need not accept a litigant's legal conclusions as true.  *Id*. at 576 (citing *Murphy v. Sofamor Danek Group, Inc.* (*In re Sofamor Danek Group, Inc.*), 123 F.3d 394, 400 (6th Cir. 1997)).  The circuit court also stated that "any interpretation of the language of the Sale Order is also a question of law, thereby necessarily requiring a legal conclusion on the part of the district court."  *Id*. (citing *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1168 (6th Cir. 1996)).  *Winget* is inapposite, however, because it does not address appellate review of a court's interpretation of its own order.  Rather, the Sixth Court considered a district court's ability to "interpret" the finality of a

bankruptcy court's order and held that courts are not obligated to "construe" the finality of an order in favor of the non-movant on a motion to dismiss.[3]

Creditor also argues that the Sale Order is akin to an agreed or consent order, which is "considered to be a binding contract among the parties" and should be interpreted using principles of contract construction. [BAP No. 17-8029, ECF No. 13 ("Appellant's Brief") at 25-26 (citing, inter alia, *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 811 (6th Cir. 2007); *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995)).] But the Sale Order is not an agreed order or consent order. Rather, Trustee tendered a proposed order in accordance with the bankruptcy court's local rule that granted his unopposed motion to sell certain assets on specific terms.[4] Only Trustee's counsel signed the Sale Order as "approved." Creditor's counsel did not sign the Sale Order. "Debtors" and "Defendants" are referenced on the service list as parties to receive the Sale Order; *i.e.*, counsel for "Debtors" and for "Defendants" also did not jointly tender the Sale Order. Thus, to the extent any agreement was reached, that agreement certainly did not include Defendants. In sum, while no party opposed Trustee's motion to sell estate assets under § 363, this does not connote an agreement to the Sale Order's terms by all pertinent parties so as to make the Sale Order akin to a contract or consent decree.

---

[3]At oral argument, Creditor stated that if the Sale Order is not considered to be an agreed or consent order (for the reasons discussed below) such that de novo review applies, then it should be reviewed for an abuse of discretion, and thus seemingly abandoned its argument under *Winget*.

[4]The Western District of Tennessee's Local Bankruptcy Rule 9074-1(c) ("Orders on bench rulings") provides:

> When the court announces an oral ruling in any matter, the judge may direct that the prevailing or other party prepare a proposed order that briefly and accurately sets forth the ruling and present it to other counsel for approval. Once approved by all parties, the proposed order should be presented to the court for approval and entry not more than ten (10) days after the ruling. If the parties cannot agree on the content of an order, each party (or the parties jointly) shall file a written motion for entry of an order accompanied by their proposed orders. Before such motion is made, the attorneys for the parties must listen to the audio recording of the ruling and certify that they have done so.

In contrast, Local Bankruptcy Rule 9074-1(a) ("Consent Orders") provides: "Parties may submit proposed orders for approval and entry that are not dispositive of any prior pleading but which may be issued upon consent or stipulation of all affected parties. Such orders shall be signed by all affected parties as provided in subsection (e) of this Rule."

In contrast to Creditor's position, Defendants argue that the applicable standard of review of a court's interpretation of its own order depends on the nature of the order at issue, and they contend that the bankruptcy court's interpretation of the Sale Order should be reviewed under an abuse of discretion standard. "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (quotation marks and citation omitted) (alteration in original).

Bankruptcy Appellate Panels in other circuits that have reviewed a bankruptcy court's interpretation of its own order approving a § 363 sale have applied this standard. *See Trilogy Dev. Co., LLC v. J.E. Dunn Constr. Co.* (*In re Trilogy Dev. Co., LLC*), 468 B.R. 835, 837 (B.A.P. 8th Cir. 2012); *Hujazi v. Schoenmann* (*In re Zuercher Trust of 1999*), BAP No. NC-15-1174-KuBS, 2017 Bankr. LEXIS 782, at *7-8 (B.A.P. 9th Cir. Mar. 22, 2017). This Panel agrees that it is appropriate to apply the abuse of discretion standard to a bankruptcy court's interpretation of its own order approving a § 363 sale, as it comports with prior relevant decisions in the Sixth Circuit regarding a court's interpretation of its own orders.

The Sixth Circuit's clearest statement with respect to evaluating orders differently based upon their context can be found in *Terex Corp. v. Metro Life Ins. Co. (In re Terex Corp.)*, 984 F.2d 170 (6th Cir. 1993), a decision offered in the context of a bankruptcy court's interpretation of a confirmed reorganization plan:

> The parties differ on the standard of review to be applied in this case. The standard of review on appeal is determined by the nature of the action taken below by the bankruptcy court. Terex argues that because the bankruptcy court relied on specific provisions of the Bankruptcy Code in arriving at its decision, the standard of review should be de novo. In contrast, Metropolitan contends that the bankruptcy court exercised its equitable powers in resolving the interest issue and that an abuse of discretion standard should therefore apply. To resolve this dispute, we turn to the reasoning and language in the bankruptcy court's July 31, 1991 order awarding interest on the claim.
>
> …
>
> We conclude that although the bankruptcy court referred to explicit provisions of the Bankruptcy Code, it did not rely on or interpret the Bankruptcy Code. Its ruling, therefore, cannot be said to constitute a legal conclusion subject to de novo review. Rather, we believe that the bankruptcy court interpreted the Plan, and

then exercised its equitable powers to breath[e] life into the provisions of the Plan. Accordingly, we review the interpretation of the Plan with full deference, and we review the bankruptcy court's exercise of its equitable powers under an abuse of discretion standard.

*Terex Corp.*, 984 F.2d at 172 (citations omitted). *Terex* is not precisely on point, because the issue raised in *Terex* was the bankruptcy court's interpretation of a confirmed plan and subsequent order under its equitable powers to effectuate the plan's terms. The issue herein concerns the bankruptcy court's interpretation of the scope of its own order approving the sale of estate assets.

However, other cases from within the Sixth Circuit, arising in diverse procedural circumstances, provide similar guidance regarding the standard of review applicable to a court's interpretation of its own prior order. For example, in a very different context, and noting the ambiguity in an order's wording, the Sixth Circuit "decline[d] to contradict the Bankruptcy Court's interpretation of its own order" granting an extension of time in which to object to a debtor's discharge—even though a trustee, and not the court, drafted the order. *Brady*, *supra*, 101 F.3d at 1169; *see also Satyam Computer Servs. v. Venture Global Eng'g, LLC*, 323 F. App'x. 421, 430 (6th Cir. 2009) (unpublished) ("We review the district court's finding of contempt for an abuse of discretion. This court typically defers to a district court's interpretation of its order and reviews for abuse of discretion because the district court 'is obviously in the best position to interpret its own order.'" (quoting *Zevitz v. Zevitz* (*In re Zevitz*), 230 F.3d 1361 (table opinion), 2000 U.S. App. LEXIS 25283, at *4 (6th Cir. Sept. 28, 2000) (additional citations omitted))); *Ohio Farmers Ins. Co. v. Hughes-Bechtol, Inc.* (*In re Hughes-Bechtol, Inc.*), 225 F.3d 659 (table opinion), 2000 U.S. App. LEXIS 18741, at *22 (6th Cir. July 27, 2000) ("[A]n interpretation of a consent order by the court that entered the order deserves respectful consideration."); *Kendrick v. Bland*, 931 F.2d 421, 423 (6th Cir. 1991) ("The District Court's interpretation of its own order is certainly entitled to great deference. The interpretation is reasonable, and serves the purpose of the order itself in reducing the involvement of the court in this case except where the prison system as a whole fails to abide by the consent decree[.]"); *Quesenberry v. Chrysler Group LLC*, Civil No. 12-48-ART, 2012 U.S. Dist. LEXIS 107380, at *14 (E.D. Ky. July 31, 2012) ("[A] bankruptcy court's interpretation of its own order is 'entitled

to substantial deference' because of its special expertise about the order's intended meaning and its greater familiarity with the underlying bankruptcy case." (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 141 n.4, 129 S. Ct. 2195 (2009))).[5]

As applied here, the Sale Order conveyed assets of Debtors' bankruptcy estate, and thus awarded relief authorized by the Code. However, the bankruptcy court did not construe the Code in entering the Sale Order. Accordingly, when the bankruptcy court later interpreted the Sale Order to determine the scope of the assets conveyed, the court did not have to apply the Code to make sense of the Sale Order. The Panel finds that the bankruptcy court was in the best position to construe the scope of the assets intended to be sold as stated in an order it entered in the bankruptcy case it was overseeing. As a result, and based on Sixth Circuit authority arising in comparable circumstances, the Panel will apply an abuse of discretion standard.

> **B.      A bankruptcy court's decision to dismiss a case for lack of subject matter jurisdiction owing to a lack of standing is reviewed de novo when it presents an issue of law.**

A challenge to a party's Article III standing invokes a federal court's subject matter jurisdiction and is properly raised by a motion made under Federal Rule of Civil Procedure 12(b)(1). *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013) (unpublished) (citations omitted); *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). The Sixth Circuit recently explained the standard of review of an order granting a motion to dismiss for lack of standing:

> "We normally review de novo the district court's decision to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004) (citing *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 880 (6th Cir. 2004)). But when a defendant challenges subject matter jurisdiction by attacking the underlying jurisdictional facts, this court reviews the district court's factual

---

[5]Citing multiple circuit decisions, the Supreme Court in *Travelers* explained that, with respect to an order confirming a plan, a bankruptcy court's interpretation of its own order "is entitled to substantial deference." 557 U.S. at 151 n.4 (citing, inter alia, *In re Dow Corning Corp.*, 456 F.3d 668, 675 (6th Cir. 2006)); *see also In re SCBA Liquidation, Inc.*, 489 B.R. 666, 679 (Bankr. W.D. Mich. 2013) ("*The 'most important factor in determining the meaning* [of an order] *is the intention of the judge who entered the order*.'" (emphasis in original) (citation omitted))).

findings for clear error and its application of the law to the facts de novo. *Lovely v. United States*, 570 F.3d 778, 781-82 (6th Cir. 2009) (citations omitted).

*Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F. App'x. 416, 418-19 (6th Cir. 2017) (unpublished).

**II.     The bankruptcy court did not abuse its discretion in interpreting the Sale Order to include the claims asserted in the 2017 Complaint.**

The bankruptcy court's Opinion discusses two main concepts.  First, the Opinion scrutinizes the Sale Order to determine the scope of the asset sale it approved.  Second, while recognizing that res judicata did not technically apply to bar the claims in the 2017 Complaint, the Opinion reviews res judicata principles to provide a pertinent context for the bankruptcy court's reading of the Sale Order.  Ultimately, the bankruptcy court dismissed the 2017 Complaint as a result of its interpretation of the Sale Order, and not based on claim preclusion.

**A.     The Sale Order's plain language supports the conclusion that the bankruptcy court did not abuse its discretion when construing the Sale Order.**

The crux of the Opinion is its discussion of the Sale Order's plain language.  Because the Sale Order's verbiage and the bankruptcy court's interpretation thereof is central to this appeal, this portion of the Opinion is quoted in full below:

> [T]he Sale Order divides the causes of action in the 2009 Complaint into two groups: those relating to the Debtors' discharge, and all other claims.  The Sale Order, which was prepared by counsel, not the court, specifically provides:
>
> > 4.  Upon payment of the sum of money set forth in paragraph 2 of this Order, all claims and/or causes of action asserted by the Trustee in the Adversary Action, except those relating to the Debtors' discharge, shall be and are hereby transferred, conveyed, and assigned to [Creditor], including but not limited to the following:
> >
> > > A.  Claims that [the Non-Debtor Defendants including the BIT] have all been used for an improper purpose and are, in fact, the alter egos or reverse alter egos of the Debtors, are shams to thwart, deceive, hinder and/or delay their creditors and to conceal assets from the claims of their creditors and/or have so used in [sic] their assets repeatedly co-mingled with the assets of each of them should be one of the same and made available to their creditors.

B.	Pursuant to 11 U.S.C. §544(b), to avoid and recover transfers by, between, to and among the Defendants, which should be set aside and avoided under applicable non-bankruptcy law; and

C.	For injunctive relief, accounting, recovery of attorneys [sic] fees, expenses and cost of court.

Sale Order, Bankr. Dkt. No. 356, ¶ 4 (emphasis added).  The Sale Order divides the causes of action in the 2009 Complaint into those dealing with the Debtors' discharge and those seeking to augment the estate with the assets of the defendant trusts and corporations.  The Sale Order provides for the sale of the second group to [Creditor].  It describes those causes of action not in terms exclusive to the universe of possible claims, as [Creditor] now asserts, but exclusive to claims related to discharge.  That this is true is indicated by using the language "including but not limited to" at the end of the first section of paragraph 4 of the Sale Order.  In general, and specifically in the context of the Bankruptcy Code, the words "include" and "including" are not words of limitation.  *See* 11 U.S.C. § 102(3).  The description of claims that follows is given as an illustration of the claims transferred.  As the order says, the sale is intended to include all claims raised in the complaint except those related to the Debtors' discharge.  Nowhere does the Sale Order say that it is limited only to certain theories of recovery.  Rather, it is concerned with the Trustee's claim to augment the bankruptcy estate with the assets of the named Defendants, including the [BIT], under any theory such as the ones given in subparagraph 4.A. by way of illustration.

*Blasingame*, 2017 Bankr. LEXIS 2362, at *18-20.

Creditor contends that the Sale Order's plain language refutes the bankruptcy court's interpretation.  Creditor argues that "the 2009 Complaint, the Sale Motion, and the Sale Order are interrelated writings" and notes that "[t]he Sale Motion and the Sale Order make express references to the 2009 Complaint."  [Appellant's Brief at 27.]  From this premise, Creditor contends:

[w]hen read in light of the 2009 Complaint, the Sale Order and the underlying Sale Motion, and thereby, the claims and causes of action that were sold by the Trustee to [Creditor], are clear and unambiguous.  Both the Sale Order and Sale Motion include qualifiers that limit the scope of the claims and causes of action sold through the Sale Order [only to] those "claims and causes of action *which have been asserted by Trustee on behalf of the bankruptcy estate in the Action*[."]

[*Id*. at 28-29 (quoting the Sale Order, emphasis in the brief).]  Creditor concludes that the Sale Order only states that the "claims and causes of action of the Trustee which have been asserted

in" the Discharge/Alter Ego Action were sold as "no mention of self-settled trust claims or causes of action are mentioned in the Sale Order." [*Id*. at 31.]

In making this argument about which causes of action were sold to Creditor, Creditor attempts to explain the use of the term "self settled" in the 2009 Complaint. Creditor posits that "the language 'self settled' exists merely as a part of the factual background for the action, not as a cause of action itself." [*Id*. at 29-30 (citing instances in the 2009 Complaint where the term "self settled" was used).] To the extent the term "self settled" was used "in the cause of action section of the 2009 Complaint," Creditor contends, this reference was "made in the context of plaintiffs seeking declaratory relief that Debtors' trusts have lost their independent status and are used exclusively to hinder, delay and defraud creditors, rather than seeking declaratory relief that Debtors' trusts are themselves self-settled." [*Id*. at 30.] But this argument misconceives the role of factual allegations in a complaint seeking relief. The 2009 Complaint expressly alleged in four separate paragraphs that certain trusts, including the BIT, were self-settled. [2009 Complaint ¶¶ 33, 47, 49, 53.][6] One of those paragraphs is within the section of the 2009 Complaint that asserts the First Cause of Action for Declaratory Relief, and it states:

> Plaintiffs seek a declaration from this Court that the three (3) Trusts and five (5) Corporations effectively have over the years lost their independent status as may have been originally designed and are now used exclusively to hinder, delay and defraud Debtors' creditors as clearly indicated by the transfer of Debtors' property into the Trusts secure from creditors and rendering the Trusts self settled in whole or part.

[*Id*. ¶ 53.] Creditor offers no legal authority for the argument that "background facts" alleged in a complaint can be divorced from the substantive causes of action plead therein. Creditor cannot simply cast off the allegations in the 2009 Complaint that now are disadvantageous to its position.

A review of the Sale Order and the Opinion confirms that Creditor's arguments are unavailing and that the bankruptcy court did not abuse its discretion by reaching its interpretation of the Sale Order. The Sale Order's plain language reflects that the bankruptcy court approved

---

[6]Each of the nine Counts of the 2009 Complaint incorporates by reference the allegations made in prior paragraphs. [2009 Complaint ¶¶ 50, 55, 57, 63, 67, 71, 79, 81, 85.]

the sale of all non-discharge-related claims and causes of action in the 2009 Complaint, including a count seeking a declaration that all of the BIT's assets were estate property. The Sale Order did not circumscribe which claims or causes of action Creditor could assert, or which legal theories Creditor could pursue, to try to recover purported estate assets from the BIT. Moreover, the 2009 Complaint expressly and repeatedly used the term "self settled" in reference to the Non-Debtor Defendant trusts pursued in the 2009 Action, which reflects that this legal theory was a part of the 2009 Complaint, and in fact was a component of the non-discharge-related claims asserted in the 2009 Complaint. As the bankruptcy court aptly noted, the Sale Order approved the sale of "all claims and/or causes of action asserted by Trustee in the Adversary Action" "*including but not limited to*" the non-discharge-related claims listed in Paragraph 4 thereof. *Blasingame*, 2017 LEXIS 2352, at *18. The Sale Order's plain language supports the bankruptcy court's ruling in the Opinion, and the bankruptcy court did not abuse its discretion in interpreting the Sale Order as it did.

**B.      Creditor's argument about extraneous evidence is inapposite.**

Creditor raised an alternative argument if the Panel did not agree with Creditor's interpretation of the Sale Order and instead concluded that the Sale Order is ambiguous. Specifically, Creditor argued that the Panel could consider certain extrinsic evidence to interpret the Sale Order. First, Creditor contended that the bankruptcy court made prior statements on the record at a hearing in August 2015 regarding the scope of the Sale Order that are inconsistent with its ruling in the Opinion. Second, Creditor posited that Creditor and Trustee would not have sought, and the bankruptcy court would not have conferred, derivative standing upon Creditor to file the 2017 Complaint on Trustee's behalf if Creditor already had acquired the claims asserted in the 2017 Complaint via the Sale Order.

As explained above, the Panel concludes that the Sale Order is not a contract and should not be interpreted like a contract. As a result, extrinsic evidence (which, when appropriate, may be used to interpret an ambiguous contract) has no clear application here. But if it did, it is not apparent that such extrinsic evidence that could be used to construe the Sale Order would include either the bankruptcy court's statements at a hearing (which were not memorialized in a written

order) or the reason for and outcome of a motion to confer derivative standing on Creditor. In any event, the Panel finds these arguments wholly unpersuasive.

With respect to the bankruptcy court's statements at the August 2015 hearing, the context of that hearing is important. At the hearing, the Court considered a purported Consent Order that Trustee and Creditor tendered that would have conveyed to Creditor certain assets for $25,000, including

> the Bankruptcy Estate's interest in the Debtors' life estate in the residence located at 337 S. Maple Street, Adamsville, Tennessee (the "Residence"), the Bankruptcy Estate's interest in personal property which was in Debtors' possession, custody and/or control and located at the Residence at the time the Debtors['] chapter 7 cases were filed, and any other property or assets of the Bankruptcy Estates which have not already been disposed of through prior orders of the Court[.]

[Case No. 08-28289, ECF No. 601 at 2.][7] The bankruptcy court stated at the hearing that "[t]hese causes of action were not covered in the prior complaint [i.e., the 2009 Complaint] and, thus, were not transferred" via the Sale Order as the new claims regarding the Residence were "focused on the life estate and the value of the life estate that the debtors have by virtue of the trust document, the residential trust document and the personal property at the residence. And I don't think either of those things was covered in the prior [S]ale [O]rder." [Case No. 08-28289, ECF No. 655 at 6-7.] Indeed, a review of the 2009 Complaint makes clear that these issues were not even arguably raised therein. Accordingly, Creditor's contention that the Court took a narrow view of the Sale Order at this hearing and a broad one in the Opinion fails to account for the distinction between matters not referenced at all in the 2009 Complaint and matters expressly alleged several times in the 2009 Complaint.

Next, Creditor's assertion about the import of the grant of derivative standing in March 2017 to pursue Defendants via the 2017 Complaint also misses the mark. It is true that Creditor and Trustee jointly tendered an Order, which the bankruptcy court entered, granting Creditor derivative standing to pursue the claims against Defendants in the 2017 Complaint. [Case No.

---

[7]Neither Creditor nor Defendants designated in the record on appeal this document filed in the record of the main case. The Panel will take judicial notice of the existence of this document and considers it not for the truth of the matters asserted therein, but rather for the fact that it was filed in the record and provides context for the hearing. Fed. R. Evid. 201; *United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1977).

08-28289, ECF No. 670.] But Creditor offers neither evidence nor legal authority that, in connection with this request, (i) the bankruptcy court was presented with any argument about the futility of the request; (ii) the court made any merits determination about the claims; or (iii) Defendants would have had any right to object to Creditor's request to pursue the 2017 Complaint based upon derivative standing. Creditor clearly wanted to explore all possible avenues to pursue property in the BIT and continue litigating with Defendants. But, the bankruptcy court's ministerial approval of a joint motion to confer derivative standing does not connote that the court abused its discretion when it later concluded that the adversary proceeding had to be dismissed for lack of standing.

### C. The bankruptcy court did not err by referencing res judicata principles in the Opinion.

In contesting the bankruptcy court's ruling, Creditor also charges that the bankruptcy court erred by "applying" principles of claim preclusion. In fact, the Opinion does cite res judicata principles because Defendants' motion to dismiss advanced an argument derived from those principles. The Opinion states that there must be an "identity of claims" for res judicata to apply, which requirement is met if "the claims arose out of the same transaction or series of transactions," or if "the claims arose out of the same core of operative facts," "regardless of the relief sought in each suit." *Blasingame*, 2017 Bankr. LEXIS 2362, at *15-16 (multiple citations omitted). The Opinion also explains that, under res judicata, a failure to bring all claims arising from the same fact pattern will result in a bar from later asserting omitted claims. *Id*. Importantly, however, the Opinion is clear with respect to how res judicata principles relate to the Sale Order:

> *While the issue before the court is not strictly one of issue preclusion, the cases offered by the Defendants help the court in recognizing the scope of the claims sold by the Trustee.* Based upon well-settled law, the causes of action sold by the Trustee included the right to assert that the assets of the [BIT] are property of the bankruptcy estate based on any theory of recovery arising out of the underlying facts described in the 2009 Complaint. Because that cause of action was sold to [Creditor] in its institutional capacity, it cannot now be pursued by it on behalf of the bankruptcy estate. Any recovery based upon that cause of action belongs to [Creditor]. Thus the present suit should be dismissed because it was brought on behalf of the bankruptcy trustee who no longer has standing to pursue it.

…

> The assets of the [BIT] can only be recovered on the basis that they are assets of the bankruptcy estate one time.  The assets of the [BIT] either are or they are not assets of the bankruptcy estate.  [Creditor] purchased the right to pursue that claim from the Trustee.  As the result of that sale, the estate has received all that it will ever receive on account of those assets.

*Id*. at \*16-18 (emphasis added).

Although the Opinion does not use this term, the tenet the bankruptcy court invoked is claim-splitting.  The Sixth Circuit has explained claim-splitting as follows: "by bringing two different suits which present two different theories of the case arising from the same factual situation, counsel has engaged in the precise behavior the doctrine res judicata seeks to discourage.  This type of duplicity should be avoided at all costs."  *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) (citations omitted); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004) ("a plaintiff must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora.  *See* Restatement of Judgments (Second) § 24 (1982).").

Nevertheless, as quoted above, the Opinion itself makes clear that the bankruptcy court was not dismissing the 2017 Complaint based on res judicata.  Rather, res judicata principles buttressed the court's interpretation of its Sale Order.  Thus, Creditor's contention that the bankruptcy court "applied" principles of claim preclusion is inaccurate, and the bankruptcy court did not err in discussing these legal principles as *dicta* in the Opinion.

**II.      As a matter of law, the bankruptcy court did not err in concluding that Creditor could not pursue the claims asserted in the 2017 Complaint derivatively on Trustee's behalf.**

Under the 2017 Complaint, Creditor did not seek to recover assets held by the BIT for itself, but rather sought to recover those assets for the Trustee on the basis of derivative standing.  Indeed, the 2017 Complaint clearly asserted that, if successful, the relief obtained would flow to Trustee.  But, as explained above, Trustee assigned the claims asserted in the 2017 Complaint to Creditor upon entry of the Sale Order.  Thus, Trustee transferred away the right to pursue the

claims asserted in the 2017 Complaint in 2011. When this occurred, Trustee lost legal standing to assert those claims.

Standing relates to who may pursue a claim. *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312 (1997) ("The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit[.]"). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854 (2006). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315 (1984). Stated differently, there is a "general prohibition on a litigant's raising another person's legal rights[.]" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citations omitted); *see also Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197 (1975) (explaining that a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (citations omitted)).

Under Tennessee law, "[a]n assignment 'passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment.'" *S&M Brands, Inc. v. Summers*, 420 F. Supp. 2d 840, 848 (M.D. Tenn. 2006) (citations omitted). In this adversary proceeding, by asserting the claims in the 2017 Complaint on Trustee's behalf based on derivative standing, Creditor effectively postured this case as though Trustee was pursuing the claims in the 2017 Complaint. Because Trustee did not have the right to pursue the claims in the 2017 Complaint, and the 2017 Complaint expressly sought relief on Trustee's behalf based on derivative standing, as a matter of law, the bankruptcy court correctly dismissed the adversary proceeding for lack of standing and, thus, lack of subject matter jurisdiction.

**CONCLUSION**

For the reasons stated, the bankruptcy court's order dismissing the 2017 Complaint is AFFIRMED.